UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
In re:                                                       :    Chapter 11
                                                             :
CREATIVE BGRS. INC. D/B/A BURGER KING,                       :
                                                             :    Case No. 16-_____ (    )
                                    Debtor.[1]               :
                                                             :
-------------------------------------------------------------X

## FIRST DAY AFFIDAVIT OF THIENG V. PHAM
## PURSUANT TO RULE 1007-2 OF THE LOCAL BANKRUPTCY
## RULES FOR THE SOUTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK            )
                             ) ss.:
COUNTY OF NEW YORK           )

Thieng V. Pham, being duly sworn, deposes and says:

1.      I am the president and the sole shareholder of Creative BGRS. INC. d/b/a
Burger King, a corporation organized under the laws of the state of New York and the debtor and
debtor in possession ("CBI" or the "Debtor" or the "Company") in the above-captioned chapter 11
case. The Company was founded in 1986 as a franchise restaurant of the Burger King Corporation
("BKC"). I have served in the capacity of president of CBI since 1995.[2]

2.      In my capacity as president of the Company, I am familiar with its day-to-
day operations, business and financial affairs, and have hands-on management responsibilities with

---

[1]    The last four digits of the debtor's federal tax identification number are 0145.

[2]    I became a 50% co-owner of CBI in 1991. In 1995, I purchased the remaining 50% equity ownership in the
Company.

respect to those affairs. I have 25 years of experience operating the Company as a franchise restaurant of BKC.

3.      I submit this affidavit (the "Affidavit") pursuant to Rule 1007-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") in support of the Debtor's petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), filed on October 3, 2016 (the "Petition Date"), and the Debtor's various first day applications and motions contemporaneously filed herewith (the "First Day Pleadings"). I have reviewed the Debtor's petition and the First Day Pleadings, and it is my belief that they are true and accurate to the best of my knowledge, and the relief sought therein is essential to ensure the uninterrupted operation of the Debtor's business while it seeks a reorganization of its business under chapter 11 of the Bankruptcy Code.

4.      Except as otherwise indicated, the facts set forth in this Affidavit are based upon my personal knowledge, my review of relevant documents, information provided to me by employees of the Debtor and Griffin Hamersky LLP (the Debtor's proposed bankruptcy counsel), or my opinion based upon experience, knowledge, and information concerning the operations of the Debtor and the quick service restaurant industry as a whole. I am authorized to submit this Affidavit on behalf of the Debtor, and if called upon to testify, I would testify competently to the facts set forth herein. Unless otherwise indicated, the financial information contained in this Affidavit is unaudited.

5.      The Affidavit is divided into four parts. Part I offers an overview of the Debtor and a discussion of the Debtor's history, capital structure, business operations and prepetition indebtedness. Part II addresses the circumstances leading to the filing of the Debtor's chapter 11 case, including the operational and liquidity issues causing the decline of the Debtor's

business, and efforts made by the Debtor to restructure its financial and operational affairs. Part III sets forth information required by Local Rule 1007-2 to the extent not otherwise provided herein. Part IV discusses the relevant relief sought in the Debtor's First Day Pleadings and the grounds for such relief.

## I.
## The Debtor's Business

A.    Company Overview and History

6.    Founded in 1986, CBI is a BKC franchise restaurant located on Canal Street in Lower Manhattan operating under the Burger King brand.[3]   The Company employs 20 employees, consisting of one salaried full-time manager and 19 hourly part-time employees. In 2014 and 2015, CBI had revenues of approximately $1.36 million and $1.37 million, respectively. Through the first ten months of 2015, CBI had revenues of $1.16 million.

B.    The Debtor's Capital Structure

7.    The Debtor is a single corporate entity of which I am the sole shareholder. The Company does not have any affiliated entities.

C.    The Debtor's Business Operations

8.    As noted herein, the Debtor is a quick service restaurant operating under the Burger King brand. In conjunction with the operation of its business, the Debtor is party to that certain Burger King Franchise Agreement, dated April 2013 (the "Franchise Agreement"). The Franchise Agreement sets forth, among other things, the parties' respective rights and obligations regarding the operation of the Company, including, but not limited to, the standards and conditions

---

[3]    The Debtor is referred to as store #3255 by the BKC.

for CBI's operation and the Debtor's payment of certain royalty, advertising and franchising fees

to BKC. The term of the Franchise Agreement concludes on December 31, 2033.

        9.     Additionally, in conjunction with the operation of its business, the Debtor

leases commercial real property (the ground level and basement) located at 273 Canal Street in

Manhattan (the "Store Lease") from the Great Canal Realty Corporation (the "Landlord"). The

term of the Store Lease expires on July 31, 2021, subject to the Debtor's option to extend the Store

Lease for an additional five years.

D.     The Debtor's Prepetition Indebtedness

        10.    The Debtor has approximately $338,000 secured debt, stemming entirely

from that certain Construction Loan and Security Agreement, as modified, dated February 5, 2013

(the "Loan Agreement"). The Debtor, has approximately $360,000 of unsecured current liabilities,

largely consisting of amounts owed to the Landlord, BKC and other trade payables to its vendors.

## II.
## Circumstances Leading to The Chapter 11 Filing

A.     Decline of the Debtor's Business

        11.    The decline of the Debtor's business is directly attributable to a confluence

of operational and liquidity factors.

        12.    In 2013, the Debtor, as required by BKC in connection with the Franchise

Agreement, entered into the Loan Agreement and a related promissory note (collectively, the

"Loan Documents") to fund certain capital improvements to the Debtor's restaurant. Almost

immediately following its entry into the Loan Documents, the Debtor had difficulty servicing both

the debt incurred on account of Loan Documents and its existing trade payables. The Debtor's

liquidity issues were further exacerbated by BKC authorizing a new franchisee to open and operate

a Burger King restaurant approximately six blocks from the Debtor's restaurant – in violation of the Franchise Agreement and over the Debtor's objection.

13.    As a result of its strained liquidity position, the Debtor fell delinquent on its payment obligations under the Loan Documents and its Store Lease, as well as its obligations to certain of its other vendors.  Although the Debtor was able to negotiate consensual modifications with many of its creditors, including BKC and the Landlord, these efforts alone simply have not been sufficient to counteract the Debtor's financial distress.  Significantly, the Landlord has initiated eviction proceedings against the Company causing the Debtor's immediate need for relief under the Bankruptcy Code.

14.    The Debtor, thus, seeks to utilize the "breathing-spell" afforded under the chapter 11 process to work with creditors to properly reorganize its affairs and propose a chapter 11 plan that would provide those creditors with meaningful recoveries.

### III.
### Information Required by Local Rule 1007-2

15.    Pursuant to Bankruptcy Rule 1007 and Local Rule 1007-2, this affidavit provides the following information:[4]

16.    Set forth in the attached Exhibit A is a list of the names and addresses and, where available, telephone numbers, of the creditors holding the twenty largest unsecured claims against the Debtor, excluding insiders, and (where available) the name of the person familiar with the Debtor's account.  This list also includes the amount of each claim, and, if appropriate, an

---

[4]    Local Rule 1007-2(3) requires disclosure of certain information regarding any committee organized prior to the order for relief in a chapter 11 case.  As no such committee was formed in this case, Local Rule 1007-2(3) is not applicable hereto.

indication whether such claim is contingent, unliquidated, disputed, or partially secured, subject to the Debtor's rights to dispute the validity of any claims.

17.    Set forth in the attached Exhibit B is a list of the names and addresses of the creditors holding the five largest secured claims against the Debtor.

18.    Set forth in the attached Exhibit C is a summary of the Debtor's assets and liabilities.

19.    Set forth in the attached Exhibit D is a list of the number and classes of debt securities of the Debtor that is publicly held. The Debtor does not have publicly held equity securities.

20.    Set forth in the attached Exhibit E is a list of the Debtor's property that is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor (other than bank accounts which may be subject to claims or setoff), or agent for any such entity.

21.    Set forth in the attached Exhibit F is a list of the premises owned, leased, or held under other arrangement from which the Debtor operates its business.

22.    Set forth in the attached Exhibit G is a list of the locations of the Debtor's substantial assets and books and records, and the nature, location and value of any assets held by the Debtor outside the territorial limits of the United States.

23.    Set forth in the attached Exhibit H is a list identifying the nature and present status of each action or proceeding, pending or threatened, against the Debtor or its property, where a judgment against the Debtor or a seizure of it property may be imminent.

24.    Set forth in the attached Exhibit I is a list of the names of the individuals who comprise the Debtor's existing senior management (including such management's affiliation

with other non debtor entities), their tenure with the Debtor, and a brief summary of their relevant responsibilities and experience.

25.    Set forth in the attached Exhibit J is a list of the estimated cash receipts and disbursements, net cash gain or loss, and unpaid obligations and receivables expected to accrue but remaining unpaid (other than professional fees), for the thirty-day period following the Petition Date.

26.    Notwithstanding anything to the contrary contained in this Affidavit or any schedule attached to this Affidavit, nothing in this Affidavit or any schedule is intended to be, or should be construed as, an admission with respect to (i) the liability for, the amount of, the enforceability of, or the validity of any claim, (ii) the existence, validity, enforceability or perfection of any lien, mortgage, charge, pledge or other grant of security for any claim, or (iii) the proper characterization of any transaction or financing as a sale or financing. The Debtor specifically reserves the right to challenge any claim or any transaction or any alleged security for any claim on any and all bases.

IV.
**First Day Pleadings and Orders**

27.    Concurrently with the commencement of this chapter 11 case, the Debtor has filed a number of First Day Pleadings and, at the "first day" hearing, will seek orders approving those pleadings and associated proposed orders (collectively, the "First Day Pleadings and Orders"). I have reviewed each of the First Day Pleadings and Orders (including the exhibits attached thereto) and the facts set forth therein are true and correct to the best of my knowledge, information and belief. I believe that the relief sought in each of the First Day Pleadings and Orders (a) is vital to enable the Debtor to make the transition to, and operate in, chapter 11 with minimum interruption or disruption to its business or loss of going concern value and (b)

constitutes a critical to the Debtor efforts to reorganize its business. I further believe that the requested relief is in the best interest of the estate.

## Creditor Consolidation Motion

28.    The Debtor requests that the Court authorize it to (i) prepare a list of creditors in electronic format in lieu of a mailing matrix and (ii) mail notices to creditors.

29.    The Debtor contends that permitting it to maintain a list of its creditors in electronic format in lieu of filing a creditor matrix is warranted under the circumstances. I am informed that converting the Debtor's information, which is currently in multiple formats, including computerized and hardcopy, to a format compatible with the matrix requirements would be an unduly burdensome task, as the Debtor's personnel to perform such task is limited to the Debtor's president and a single employee.

30.    Further, no claims agent has been retained in this case, therefore the I am advised that the Debtor will undertake all mailings directed by this Court, the U.S. Trustee, or as required by the Bankruptcy Code and Local Bankruptcy Rules.

31.    I believe that the relief requested in the Creditor Consolidation Motion is in the best interests of the Debtor's estate, its creditors and all other parties in interest, and will preserve the assets of the Debtor's estate during the chapter 11 process without prejudice to any party in interest. Accordingly, I respectfully submit that the Creditor Consolidation Motion be approved.

## Motion to Extend Time to File Schedules

32.    The Debtor seeks entry of any order extending the time for it to file its statements of financial affairs and schedules of assets and liabilities (collectively, the "Schedules and Statements"), for an additional thirty (30) days pursuant to Bankruptcy Rules 1007 and 9006.

33.    To prepare the Schedules and Statements, the Debtor will have to compile information from voluminous books, records, and documents. The limited time and resources available to the Debtor to marshal the required information to complete the Schedules and Statements, necessitate an extension of the deadline for the Debtor to file those documents. The Debtor has begun compiling the information that will be required to complete the Schedules and Statements; however, the 14-day time period provided by Bankruptcy Rule 1007 will not give the Debtor sufficient time to complete them. Further, the Debtor has a limited number of people available to assist in preparing the Schedules and Statements. As a result, the Debtor does not anticipate that it will be able to complete the Schedules and Statements timely.

34.    I believe that a 30-day extension is necessary due to the vast amount of information that the Debtor must assemble and compile, and the number of hours required to complete the Schedules and Statements. Additionally, I believe the Debtor should initially focus its attention on vital operational issues during the initial phases of this case, which will help the Debtor make a smooth and orderly transition into chapter 11, ultimately maximizing the value of the Debtor's estate for the benefit of creditors and all parties in interest.

35.    Therefore, I believe that the extension requested is necessary for the Debtor; however, I also believe that the Debtor will be able to file its Schedules and Statements within the 30-day extension requested.

**Cash Management Motion**

36.    The Debtor requests entry of interim and final orders authorizing, but not directing: (i) the continued maintenance of the Debtor's existing bank accounts; (ii) the continued

9

use of the Debtor's existing business forms; (iii) the continued use of the Debtor's existing cash management system; and (iv) a waiver of certain operating guidelines relating to bank accounts.

37.    The Debtor maintains a cash management system (the "Cash Management System") that facilitates the efficient flow and management of funds involved in the Debtor's business operations.  The Cash Management System addresses the specific needs of the Debtor, which ensures its ability to efficiently monitor and control its cash position.

38.    In connection with the Cash Management System, the Debtor maintains two (2) bank accounts (the "Bank Accounts") at Bank of America, N.A. ("BofA").  The first account (ending in Acct No. 4296) serves as the Debtor's primary operations account (the "Operations Account").  The Operations Account holds payments collected from customers and disburses funds to pay certain of the Debtor's obligations, including, but not limited to, obligations related to the Debtor's franchise agreement with BKC, rent associated with the Debtor's Store Lease, insurance, and service and supplier obligations.  On average, the Operations Account receives an aggregate amount of approximately $136,300 per month and disburses an aggregate amount approximately $136,700 per month.

39.    The Debtor's second account (ending in Acct. No. 3247) serves as the Debtor's disbursement account (the "Disbursement Account").  The Disbursement Account is used primarily to satisfy the Debtor's payroll obligations (including weekly payroll and related payroll taxes) and to pay the Debtor's major food and produce supplier.  The Debtor funds the Disbursement Account on an as-needed basis from amounts held in its Operations Account.  On average, the Debtor's Disbursement Account receives and disburses aggregate amounts of approximately $57,000 per month.

40.    The Debtor will continue to maintain records with respect to all transfers between the Bank Accounts so that all transactions are accurately recorded and readily ascertainable. The Debtor is able to trace funds through the Cash Management System, and the Debtor is able to track and reconcile payments on its behalf. The Debtor therefore requests that the Court authorize it to continue to use its existing Cash Management System, and to transfer funds into, out of, and through the Cash Management System in the ordinary course of business.

41.    I believe that the continued use of the Cash Management System is in the best interest of Debtor's estate and its creditors as the continued use of the Cash Management System Bank Accounts will allow the Debtor to effectively function while in chapter 11. Accordingly, I respectfully submit that the Cash Management Motion be approved.

**Employee Wages Motion**

42.    The Debtor seeks authority to pay prepetition obligations to current employees (the "Employees"), including accrued prepetition wages, in an amount not to exceed $12,850 for each employee (collectively, "Employee Wage Claims").

43.    As set forth above, as of the Petition Date, the Debtor had 20 Employees: one full-time salaried Employee manager, and 19 part-time hourly Employees. The Debtor pays the Employees on a weekly basis, every Friday, with such weekly payroll ranging from $5,700 to $6,000. As of the Petition Date, the Debtor estimates owing approximately $2,500 in accrued Employee Wage Claims.

44.    I contend that the Employees are essential to the ongoing operation of the Debtor's business. Indeed, the Employees, prepare meals for, and serve, the restaurant's customers and maintain the restaurant in accordance with the various standards set forth in the Franchise Agreement and in accordance with local, state, and federal laws and regulations. Without the

11

continued services of the Employees, I do not believe that we can successfully reorganize the Company.

45.    I assert that if prepetition wages and amounts are not received by the Employees in the ordinary course, the Employees will suffer extreme personal hardship and, in many cases, will be unable to pay their basic living expenses. Such result would destroy Employee morale and result in considerable Employee turnover, causing immediate and widespread damage to the Debtor's ongoing business operations – in turn, causing significant harm to the Debtor and its estate.

46.    Accordingly, I believe that the relief requested in the Employee Wages Motion is in the best interests of the Debtor's estate and will enable the Debtor to continue to operate its business without disruption so as to avoid immediate and irreparable harm. I respectfully request that the Employee Wages Motion be approved.

**Customer Programs Motion**

47.    The Debtor requests entry of interim and final orders authorizing the Debtor to continue to operate customer programs (the "Customer Programs"), including the authority to continue, renew, replace, and/or terminate one or more Customer Programs and implement new Customer Programs, in each case, as the Debtor deems appropriate in the ordinary course of business, thereby ensuring and maintaining customer satisfaction and loyalty without interruption throughout the duration of this chapter 11 case.

48.    As more fully described in the Customer Programs Motion, the Debtor's Customer Programs include the following programs:

   a)    Gift Certificates and Coupons: From time to time, the Debtor issues gift certificates, which are given out to customers for future use at their location. Additionally, the Debtor also offers discount coupons and promotions at participating restaurants in order to enhance customer

loyalty.

b) <u>Gift Cards</u>: The Debtor indirectly sells and honors cards to consumers that are eligible for redemption at Burger King restaurants. All of the gift cards are funded by BKC and are recognized on BKC's financial statements. The Debtor does not have any reimbursement obligations for any gift cards.

49. The Debtor requests authority to maintain and administer the Customer Programs and to pay prepetition obligations related thereto in the ordinary course of business and in a manner consistent with past practices. I believe that the Debtor will suffer immediate and irreparable harm absent the authority requested, as the inability to maintain the Customer Programs will harm the Debtor's reputation and ability to maintain customer loyalty and support. Further, I believe that maintaining the Customer Programs will encourage the customers to continue to purchase the Debtor's products thus helping maintain revenues during the chapter 11 case. Accordingly, I respectfully ask that the court grant the relief sought in the Customer Programs Motion.

**Motion to Confirm Protections of Automatic Stay and *Ipso Facto* Provisions**

50. The Debtor requests a protective order enforcing and restating the automatic stay and *ipso facto* provisions of the Bankruptcy Code. I have been advised that the certain of the Debtor's creditors may not be well versed in the restrictions of the Bankruptcy Code, specifically the automatic stay provision of Bankruptcy Code section 362. Many of these creditors do not transact business on a regular basis with companies that have filed for chapter 11 protection or are unfamiliar with the scope of a debtor in possession's authority to conduct its business. These creditors may be unfamiliar with the operation of the automatic stay and other provisions of the Bankruptcy Code.

51.    Furthermore, I believe that it is possible that certain parties may attempt to engage in activities that violate the automatic stay upon learning of the chapter 11 case, including, but not limited to, aggressive collection efforts against the Company. I believe that an order from the Bankruptcy Court will prevent such acts, and preempt further disputes before this Court.

52.    Additionally, I believe that the relief requested in the Automatic Stay Motion will help facilitate the Debtor's orderly entry into chapter 11 and will help avoid disruptions and distractions that could divert the Debtor's attention from more pressing matters during the initial phase of this case. Accordingly, I believe it is the best interests of the Debtor's estate to be granted an order enforcing and restating the automatic stay and *ipso facto* provisions of the Bankruptcy Code.

**Tax Motion**

53.    The Debtor seeks authority to pay potential prepetition taxes and similar obligations (collectively, the "Taxes"), to the respective taxing or other appropriate authorities (the "Taxing Authorities") in the ordinary course of the Debtor's business, including, but not limited to, the payment of corporate Taxes relating to any tax returns that have yet to be filed, which arise from prepetition periods.

54.    As of the Petition Date, the Debtor believes that there are no outstanding accrued and unpaid prepetition liabilities owing to Taxing Authorities. The Debtor is current on its New York State tax filings and is in the process of preparing for filing its Federal taxes for the year ending 2015. The Debtor seeks authority to pay all corporate Taxes owing to the Internal Revenue Service, State of New York, and City of New York, should any become due.

55.    Additionally, the Debtor believes that it is current on its obligations with respect to sales and use Taxes. However, to the extent requests for such payments of Taxes for

the prepetition period are received by the Debtor subsequent to the Petition Date, the Debtor seeks authority to pay such amounts.

56.    The continued payment of the Taxes on their normal due dates will ultimately preserve the resources of the Debtor's estate, thereby creating a greater recovery for creditors. If such obligations are not timely paid, the Debtor will be required to expend time and incur attorneys' fees and other costs to resolve a multitude of issues related to such obligations, each turning on the particular terms of each taxing authority's applicable laws, and whether penalties, interest, and attorneys' fees and costs can continue to accrue on a postpetition basis, and, if so, whether such penalties, interest, and attorneys' fees and costs are priority, secured, or unsecured in nature.

57.    In addition, to the extent the Debtor has not yet sought to remit payment to the taxing authorities with respect to certain Taxes, the Debtor seeks authorization to issue checks or provide for other means of payment to the taxing authorities as necessary to pay the Taxes.

58.    Thus, to prevent immediate and irreparable harm to the Debtor's business and reorganization efforts, I believe that the relief requested in the Tax Motion is in the best interests of the Debtor's Bankruptcy estate, its creditors, and all other parties in interest, and will enable the Debtor to continue to operate in chapter 11 without disruption.    Accordingly, I respectfully submit that the Taxes Motion should be approved.

**Insurance Motion**

59.    The Debtor seeks entry of an interim and final order, pursuant to Bankruptcy Code sections 105, 361, 362, 363, 503, 1107(a) and 1108 and Bankruptcy Rules 6003 and 6004, (i) authorizing, but not directing, the Debtor to maintain and to pay all premiums and other

obligations related thereto, including any taxes, deductibles, administration fees, consulting fees, brokerage fees, assessments, or other fees (collectively, the "Insurance Obligations").

60.    In connection with the operation of their business, the Debtor maintains various insurance policies (the "Insurance Policies") that provide coverage for, among other things, disability, workers' compensation liability, and general liability.

61.    I believe that continuation of these Insurance Policies, as well as the ability to enter into new Insurance Policies, is essential to preserving the value of the Debtor's business. Additionally, the coverage provided by the Insurance Policies, especially the workers' compensation policy, is required by New York and federal laws, including the requirements set forth in the United States Trustee's Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees. Thus, if the Debtor does not continue to perform its obligations under the Insurance Policies, their coverage under the Insurance Policies could be voided. I believe this would cause serious and irreparable harm to the Debtor's business, as they would likely be exposed to increased costs and risks of loss.

62.    Accordingly, I believe that the relief sought through the Insurance Motion is necessary for the Debtor to continue operating its business throughout this case, without disruption, and is in the best interest of the Debtor, its creditors, and other parties-in-interest. Therefore, I respectfully request that the Insurance Motion be approved.

**Administrative Expense Motion**

63.    The Debtor requests authority to (i) grant administrative priority expense status to undisputed obligations arising from the postpetition delivery of goods and services ordered prepetition, (ii) grant the Debtor the authority to pay claims arising under the Perishable Agricultural Commodities Act of 1930 ("PACA") to vendors subject to such Act (the "PACA

Vendors," whose claims shall be identified as "PACA Claims"); and (iii) authorizing, but not directing, the Debtor to pay such obligations in the ordinary course of business.

64.    As is common in the quick service restaurant industry, the Debtor relies on third-party vendors (collectively, the "Vendors") to provide it with the goods and services necessary to maintain its day-to-day operations. The Debtor also relies on Vendors to deliver certain perishable items including produce and fresh dairy.

65.    As of the Petition Date, the Debtor has certain outstanding purchase orders with these Vendors for the delivery of produce and other foods, as well as other goods and services that are necessary for the ordinary operation of the Debtor's business (the "Prepetition Orders").

66.    Any disruption in the Debtor's supply chain, such as a vendor halting delivery of certain necessary goods and/or services, could result in the Debtor not having sufficient food, products and supplies to operate and to provide a seamless customer experience. Such a result could potentially have a devastating impact on the Debtor's business and significantly impair its restructuring efforts.

67.    Vendors may be concerned that the obligations arising from goods or services ordered prepetition and subsequently delivered or rendered postpetition will be treated as general unsecured claims against the Debtor's estate. As a result, Vendors may refuse to ship such goods, recall current shipments, or not perform services promised under Prepetition Orders.

68.    I believe that an order of the Court clarifying the administrative expense priority status of Prepetition Orders delivered postpetition will alleviate much uncertainty and facilitate the Debtor's ability to conduct its business in an ordinary and uninterrupted fashion throughout its chapter 11 case.

69.    Further, I believe that granting the Debtor the authority to pay obligations on account of Prepetition Orders will ensure that Vendors remain willing to do business with the Debtor going forward.  These Vendor relationships are crucial to maintaining the enterprise value of the Debtor's business, and ultimately, to the success of this chapter 11 case.  Therefore, I respectfully request that the Administrative Expense Motion should be approved.

70.    The foregoing is true and correct to the best of my knowledge and belief.

Dated:    New York, New York
           October 3, 2016

                                        /s/ Thieng V. Pham
                                        Thieng V. Pham


SWORN TO before me this
3rd day of October, 2016

/s/ David M. Smith
David M. Smith
Notary Public-State of New York
No. 02SM6300826
Qualified in New York County
My Commission Expires April 7, 2018

# EXHIBIT A

## EXHIBIT A

### List of Creditors Holding of the Twenty (20) Largest Unsecured Claims

As required under Local Bankruptcy Rule 1007-2(a)(4), the following is a list of the Debtor's twenty (20) largest unsecured claims, as of October 3, 2016. The information contained herein shall not constitute an admission of liability by, nor is it binding on, the Debtor. Moreover, nothing herein shall affect any rights of the Debtor to challenge the amount or characterization of any claim at a later date.  This list does not include (1) persons who come within the definition of "insider" set forth in section 101 of the Bankruptcy Code, (2) secured creditors or (3) claims held by the Debtor's employees.

Fill in this information to identify the case:

Debtor name: _Creative BRGS. Inc. d/b/a Burger King_

United States Bankruptcy Court for the Southern District of New York

Case number (If known): _____

## Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders
12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider*, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured Claim |
| 1 | Great Canal Realty Corp. | Great Canal Realty Corp. c/o Steven T. Gee, P.C. 121 Chrystie St. New York, NY 10002 T (212) 334-8838 F (212) 732-1043 E steven.stgpc@gmail.com | Lease | Disputed | | | $192,420.00 |
| 2 | Burger King Corporation | Burger King Corporation 5505 Blue Lagoon Dr., 8th Fl. Miami, FL 33126 Attn: Jeff Grill T (305) 378- 3766 F (305) 378-3502 | Trade Debt | Disputed | | | $106,619.38 |
| 3 | American Express Business c/o Zwicker & Associates, P.C. | American Express Business c/o Zwicker & Associates, P.C. 80 Minuteman Rd. Andover, MA 01810-1008 Attn: John Glazebrook T (877) 368-4531 F (978) 686-3538 | Credit Card | | | | $13,269.97 |
| 5 | Consolidated Edison Company of New York, Inc. | Consolidated Edison Company of New York, Inc. 4 Irving Place New York, NY 10003-0987 Attn: Thomas Reid T (212) 460-2097 F (212) 677-5850 E reidth@coned.com | Utilities | | | | $11,344.53 |
| 6 | AAA Electronics Services | AAA Electronics Services 218-10 Hillside Ave. Queens Village, NY 11427 T (718) 526-4848 F (347) 426-9109 | Professional Services | | | | $2,791.98 |
| 7 | Bank of America Business Card | Bank of America Business Card Bank of America, N.A. Legal Order Processing/Christiana IV 800 Samoset Dr. Newark, DE 19713 T (800) 432-1000 E seth.denson@baml.com | Credit Card | | | | $2,370.58 |
| 8 | Nationwide | Nationwide One Nationwide Plaza Columbus, OH 43215-2220 T (800) 882-2822 | Insurance | | | | $2,131.80 |

| # | Creditor | Address | Type | Disputed | Amount |
|---|----------|---------|------|----------|--------|
| 9 | City of New York Environmental Control Board | City of New York Environmental Control Board<br>PO Box 2339<br>Peck Slip Station<br>New York, NY 10272-2339<br>T (844) 628-4692<br>F (212) 361-1900 | Fine | | $2,000.00 |
| 10 | HCD Architect | HCD Architect<br>Attn: Tim Hao<br>65-30 108 St. Ste. 3A<br>Forest Hills, NY 11375<br>T (718) 459-5926<br>F (718) 459-5926<br>E hcdarchitect@gmail.com | Professional Services | | $2,000.00 |
| 11 | Rochdale Insurance Company | Rochdale Insurance Company<br>800 Superior Ave. E., 21st Fl.<br>Cleveland, OH 44114<br>T (800) 438-0160 | Insurance | | $1,500.00 |
| 12 | MUZAK LLC | MUZAK LLC<br>c/o Corporate Creations Network Inc.<br>3411 Silverside Rd. # 104<br>Rodney Building<br>Wilmington, DE 19810<br>T (800) 426-1600 | Trade Debt | Disputed | $1,287.29 |
| 13 | Restaurant Technologies, Inc. | Restaurant Technologies, Inc.<br>2250 Pilot Knob Rd., Ste 100<br>Mendota Heights, MN 55120<br>T (888) 796-4997<br>F (651) 379-4082<br>customercare@rti-inc. | Trade Debt | | $1,115.70 |
| 14 | Coca-Cola Refreshments USA, Inc. | Coca-Cola Refreshments USA, Inc.<br>c/o Corporation Service Company<br>505 5th Ave. Ste 729<br>Des Moines, IA 50309<br>T (770) 989-3000<br>F (770) 989-3640 | Trade Debt | | $1,088.35 |
| 15 | Time Warner Cable | Time Warner Cable<br>c/o CT Corporation System<br>111 Eighth Ave., 13th Fl.<br>New York, NY 10011<br>T (866) 892-4249 | Utilities | | $846.95 |
| 16 | Ecolab USA Ecosure | Ecolab USA<br>Ecosure<br>370 N. Wabasha St.<br>St. Paul, MN 55012-2233<br>T (866) 326-7871<br>F (630) 305-2856<br>E maryhelen.harkis@ecolab.com | Professional Services | | $560.00 |
| 17 | Sicom Systems, Inc. | Sicom Systems, Inc.<br>4344 Progress Meadow<br>Doylestown, PA 18902<br>T (215) 489-2500<br>F (215) 489-2769<br>E mhare@sicom.com | Trade Debt | | $509.19 |
| 18 | NuCO2 | NuCO2<br>2800 SE Market St.<br>Stuart, FL 34997<br>T (800) 472-2855, Option 2<br>F (772) 220-4752<br>E credit@nuco2.com | Trade Debt | | $431.29 |
| 19 | Ameritech Systems Corporation | Ameritech Systems Corporation<br>127-03 20th Ave. Ste 2B<br>College Point, NY 11356<br>T (718) 353-0477<br>F (718) 353-4468<br>E ameritechsystems@gmail.com | Trade Debt | | $381.96 |
| 20 | Verizon c/o Sunrise Credit Services, Inc. | Verizon<br>c/o Sunrise Credit Services, Inc.<br>260 Airport Plaza<br>Farmingdale, NY 11735-9100<br>Attn: Chris Matthews<br>T (844) 705-0291<br>F (631) 501-8534 | Utilities | | $310.93 |

# EXHIBIT B

## EXHIBIT B

### Holder of the Debtor's Five (5) Largest Secured Claims

Pursuant to Local Bankruptcy Rule 1007-2(a)(5), to the best of the Debtor's knowledge, belief, and understanding, the below chart lists creditors holding, as of the Petition Date, the five (5) largest secured, non-contingent claims against the Debtor, on a consolidated basis, excluding claims of insiders.[1]

| Creditor's Name, Mailing Address (including the number, street, apartment or suite number, and zip code, if not included in the post office address) and Telephone Number | Total amount of the claim | Description of collateral | Estimated value of the collateral | Whether claim or lien is disputed |
|---|---|---|---|---|
| National Franchise Acceptance, L.L.C.<br><br>c/o National Finance Associates, LLC<br>400 E. 22nd St., Suite A<br>Lombard, IL 60148<br><br>Attn: Burger King 20/20 Program & Jeff Moore<br>T (630) 620-9611<br>F (630) 889-9329 | $338,693.00 | Unknown | Unknown | Disputed |

___

[1] The Debtor has one secured claim. The amount set forth on this Exhibit represents the estimated amount as of the Petition Date and shall not constitute an admission of liability with respect to the priority, extent or validity of such amount, nor is it binding on the Debtor.

# EXHIBIT C

## EXHIBIT C

## Summary of the Debtor's Assets and Liabilities

Pursuant to Local Bankruptcy Rule 1007-2(a)(6), the following are estimates of the Debtor's total assets and liabilities. The following financial data is the latest available information and reflects the Debtor's financial condition based on the Debtor's 2014 federal tax returns.[1]

The information contained herein shall not constitute an admission of liability by, nor is it binding on, the Debtor. The Debtor reserves all rights to assert that any debt or claim included herein is a disputed claim or debt, and to challenge the priority, nature, amount, or status of any such claim or debt.

**Total Assets: $612,932**
**Total Liabilities: $612,932**

---

[1] The Debtor's 2015 federal tax returns are in the process of being prepared for filing.

# EXHIBIT D

## EXHIBIT D

**Publicly Held Securities**

Pursuant to the disclosure required under Local Bankruptcy Rule 1007-2(a)(7), the Debtor has no publicly held securities.

# EXHIBIT E

# EXHIBIT E

## Debtor's Property Not in Debtor's Possession

As required under Local Bankruptcy Rule 1007-2(a)(8), the following is a list of the Debtor's property not in the Debtor's possession. To the extent the Debtor paid any professional fee retainers to professionals, these can be viewed within the individual professional fee applications.

| Type of Property | Value of Property | Party in Possession | Address and Telephone Number of Party in Possession |
|---|---|---|---|
| Cash Deposit for Office Lease | $63,123.84 | Great Canal Realty Corp. | c/o Steven T. Gee, P.C.<br>121 Chrystie Street<br>New York, New York 10002<br>212-334-8838 |

# EXHIBIT F

## EXHIBIT F

### Debtor's Premises

As required under Local Bankruptcy Rule 1007-2(a)(9), the following lists the premises owned, leased or held under other arrangement from which the Debtor operates its business as of the Petition Date.

| Property Address | City | State | ZIP Code | Description |
|---|---|---|---|---|
| 273 Canal Street | New York | NY | 10013 | Headquarters/Restaurant Location. |

# EXHIBIT G

## EXHIBIT G

### Location of Debtor's Substantial Assets and Books and Records,
### and Nature and Location of Debtor's Assets Outside of the United States

As required under Local Bankruptcy Rule 1007-2(a)(10), the following lists the location of the Debtor's substantial assets, the location of its books and records, and the nature, location and value of any assets held by the Debtor outside the territorial limits of the United States.

The Debtor's substantial assets as well as its books and records are located at 273 Canal Street, New York, NY 10013

Nature, location, and value of any assets held by the Debtor outside the territorial limits of the United States:

| Description of Asset | Location of Asset | Value of Asset |
| --- | --- | --- |
| N/A | N/A | N/A |

# EXHIBIT H

**Exhibit H**

**Summary of Litigation Actions or Proceedings**

| | Case Name | Case No. | Plaintiff(s) or Adversary | Defendant(s) or Adversary | Court Where Pending | Litigation Type |
|---|---|---|---|---|---|---|
| 1 | Great Canal Realty Corp. v. Creative BGRS Inc. | Index No. L/7065976-15 | Great Canal Realty Corp. | Creative BGRS Inc. | Civil Court of the City of New York (County of New York) | Notice of Eviction for alleged failure to pay rent, dated September 22, 2016. |
| 2 | New York City Dept. of Consumer Affairs - Sick Leave Compliant/Investigation | Record No. ID 0752-2016-PSLD | New York City Dept. of Consumer Affairs | Creative BGRS Inc. | N/A | New York City Dept. of Consumer Affairs alleges Creative BGRS Inc. violated various sections of New York City Paid Sick Leave Law. As of October 1, 2016, no formal complaint has been filed in this matter. |
| 3 | Mignott v. Phan | Index No. 707559/2014 | Mignott | Thieng V. Phan | Supreme Court of the State of New York (County of Queens) | Personal injury claim by Plaintiff for alleged injury occurring at Debtor's premises. |

# EXHIBIT I

EXHIBIT 1

**Debtor's Senior Management**

Pursuant to Local Bankruptcy Rule 1007-2(a)(12), the following lists the names of the individuals who comprise the Debtor's existing senior management, their tenure with the Debtor, and a brief summary of their relevant responsibilities and experience.

| Director/Officer | Position | Responsibilities & Experience |
|---|---|---|
| Thieng V. Pham | President | Mr. Pham is the President of Creative BGRS, Inc. d/b/a Burger King. He originally operated the Debtor as a 50% owner from 1991 to 1995. Since 1995, Mr Pham has operated the Debtor as its sole owner. |

# EXHIBIT J

## EXHIBIT J

## Operations for Thirty (30) Day Period After Filing

Pursuant to Local Bankruptcy Rule 1007-2(b), the following lists information relating to operational and financial matters of the Debtor for the thirty (30) day period following the filing of its chapter 11 petition.

**See Attached Schedule**

## CREATIVE BGRS CORP (D/B/A BURGER KING)
### OPERATIONAL AND FINANCIAL MATTERS OF THE DEBTOR FOR THE THIRTY (30) DAY PERIOD FOLLOWING THE FILING OF ITS CHAPTER 11 PETITION

### MONTHLY BUDGET

**Cash Receipts:**

| | |
|---|---|
| **Total Cash Receipts:** | **$136,300.00** |

**Cash Disbursements:**

| | |
|---|---|
| Rent* | $20,250.00 |
| Salaries and Benefits | $24,000.00 |
| Utilities | $6,200.00 |
| Insurance | $2,700.00 |
| Burger King - Advertising, Royalty, and Franchise)* | $0.00 |
| Trade Payables | $50,000.00 |
| Miscellaneous Materials and Office Expenses | $2,000.00 |
| Professional Fees | $10,000.00 |
| **Total Cash Disbursements:** | **$115,150.00** |

| | |
|---|---|
| **Ending Cash Balance** | **$21,150.00** |

* Debtor assumes abatements and / or modifications for rent and Burger King related advertising, royalty, and franchise fees.