Steven T. Gee, P.C.                     Hearing Date:November 2, 2016
Attorney for Creditor                   Time:10:00 a.m.
Great Canal Realty Corp.                Objections Due: November 1, 2016
121 Chrystie Street                     Time:10:00 a.m.
New York, New York 10002
Telephone (212) 334-8838
Facsimile (212)732-1043

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------

In Re:                    .              Chapter 11

                                         Case No. 16-12787(MKV)

**CREATIVE BGRS, INC. D/B/A BURGER KING**

        Debtor.


----------------------------------------
    **NOTICE OF MOTION OF GREAT CANAL REALTY FOR ORDER MODIFYING**
        **AND LIFTING THE AUTOMATIC STAY OF 11 U.S.C. § 362**

    **PLEASE TAKE NOTICE,** that Great Canal Realty Corp.("Great
Canal"), the landlord and a creditor of Creative Bgrs, Inc. (the
"Debtor"), and the owner of the ground level and basement
commercial space in the building known as and located at 273
Canal Street, New York, New York 10013 (the "Premises"), will
move before the Honorable Mary Kay Vyskocil for an order pursuant
to Section  4001(a) the Bankruptcy Rules; Sections  362(d)(1),
362(d)(2), 362(e), 365(d)(1) of the Bankruptcy Code; and New York
Real Property  Actions and Proceedings Law sec. 749(3), as
follows:

    (1)  pursuant to 11 U.S.C. Section 362, modifying and
lifting the automatic stay, thereby permitting Great Canal to
enforce the judgment of possession and execute on the warrant of
eviction issued in the Pre-Petition non-payment proceeding to
obtain possession of the Premises from the Debtor; and

    (2) granting such further relief as this court may deem just
and proper.

**PLEASE TAKE FURTHER NOTICE**, that a hearing to consider the Motion will be held on November 2, 2016, at 10:00 a.m. before the Honorable Mary Kay Vyskocil, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton U.S. Custom House, One Bowling Green, New York, New York 10004-1408.

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the relief sought in the Motion shall be filed in writing with the Court at One Bowling Green, New York, New York 10004-1408 no later than November 1, 2016, at 10:00 a.m. (the "Objection Deadline"), and served so as to be actually received by the following parties by the Objection Deadline: (i) Counsel for Great Canal, Steven T. Gee, P.C., 121 Chrystie Street, New York, New York 10002, Attn.: Steven T. Gee, Esq.;(ii) Counsel to the Debtor, Griffin Hamersky, LLP, 420 Lexington Avenue, Suite 400, New York, NY 10170, Attn.: Scott A. Griffin, Esq. and Michael D. Hamersky, Esq.(iii) the United States Trustee, Attn: Susan Arbeit, Esq. U.S. Federal Office Building, 201 Varick Street, Suite 10006, New York, New York 10014; (iv) the parties listed on the Debtor's List of Creditors Holding the 20 largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d), or if any official committee of unsecured creditors has been appointed, counsel to such committee; and (v) counsel to any other official committee appointed in this Chapter 11 Case.

Dated: New York, New York
      October 14, 2016

                                STEVEN T. GEE, P.C.
                                ATTORNEY AT LAW
                                Attorney for Creditor
                                Great Canal Realty Corp.
                                121 Chrystie Street
                                New York, New York 10002
                                (212) 334-8838

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------

In Re:                                        Chapter 11

                                              Case No. 16-12787(MKV)

CREATIVE BGRS, INC. D/B/A BURGER KING

              Debtor.                         AFFIRMATION IN
                                              SUPPORT

--------------------------------------

STEVEN T. GEE, an attorney duly admitted to practice law before all the Courts of the State of New York and admitted in the Eastern District of New York, hereby affirms the following to be true under the penalty of perjury:

1.  I am the attorney for the Creditor-Landlord GREAT CANAL REALTY CORP. ("Great Canal") and, as such, I am fully familiar with the facts and circumstances to the extent set forth below.

2.  This affirmation is submitted in support of Great Canal's motion for an order modifying and lifting the automatic stay of 11 U.S. Code § 362 to allow Great Canal to enforce the judgment of possession and execute on the warrant of eviction issued in the Pre-Petition summary non-payment proceeding to obtain possession of the ground level and basement commercial space in the building known as and located at 273 Canal Street, New York, New York 10013 (the "Premises") from the Debtor.

BACKGROUND

Chapter 11 filing

3.    On October 4, 2016 (the "Filing Date"), the Debtor filed a petition under chapter 11 of the Bankruptcy Code in this Court.

4.    Upon information and belief, the Debtor Creative Bgrs, Inc. (herein referred to as the "Debtor") operates a Burger King restaurant at the subject Premises.

Factual history

5.    Great Canal is the owner and landlord of the subject Premises.    A true copy of the deed to the building in which the Premises is situated is annexed hereto as **Exhibit "A"**.

6.    The Debtor became in possession of the Premises pursuant to a written commercial lease (the "lease").    A true copy of the lease is annexed hereto as **Exhibit "B"**.

7.    On or about February 23, 2015, Great Canal brought a summary nonpayment proceeding in the Civil Court of the City of New York, County of New York (the "non-payment proceeding"), against the Debtor due to its failure to pay the required rent under the lease.

8.    The Debtor failed to answer or appear in the nonpayment proceeding.    As a result, on April 9, 2015 a judgment of possession was granted in favor of Great Canal against the Debtor, and on April 20, 2015, the warrant of eviction was issued in the non-payment proceeding.    A true copy of the judgment of

possession and warrant of eviction is annexed hereto as **Exhibit "C"**.

9.   Thereafter, the Marshall's Notice of Eviction was served upon the Debtor.

10.   On April 29, 2015, the parties entered into and filed with the court a stipulation of settlement, in which execution of the warrant was stayed for the Debtor to pay the rent arrears of $182,891.91 pursuant to a payment schedule.   Each party was represented by counsel. A true copy of this Stipulation is annexed hereto as **Exhibit "D"**.

11.   The Debtor failed to comply with the stipulation, resulting in re-service of the Marshall's Notice of Eviction.

12.   On September 1, 2015, the parties entered into and filed with the Court a second stipulation of settlement, in which execution of the warrant was stayed for the Debtor to pay rent arrears of $243,181.51 pursuant to another payment schedule. Each party was again represented by counsel. A true copy of this Stipulation is annexed hereto as **Exhibit "E"**.

13.   Pursuant to paragraph 6 of this stipulation, upon the Debtor's default, the stay of eviction was immediately lifted and the warrant of eviction could be executed upon service of the Marshall's notice of eviction, and all rental arrears and any accruing rent become due and owing.

14.   The Debtor failed again to remit the required payments under the stipulation. More particularly, the Debtor was required

to pay $23,000.00 each month for August and September, 2016 but instead paid $15,017.58 in August, and $15,000.00 in September, 2016. See affidavit of Dunnie Lai annexed hereto.

15. As a result, Great Canal had the Marshall serve again the Notice of Eviction on the Debtor, and the eviction was scheduled for October 6, 2016.

16. The Debtor subsequently filed this Chapter 11 bankruptcy proceeding staying its eviction from the subject Premises.

17. Great Canal now moves to lift the automatic stay of 11 U.S. Code § 362 to allow it to enforce the judgment of possession and execute on the warrant of eviction issued in the nonpayment proceeding due to the Debtor's default of the September 1, 2015 stipulation of settlement.

18. For the Court's information, as a consequence of the its default of the September 1st stipulation, the Debtor currently owes a total of $299,316.43 in rental arrears to Great Canal, which is broken down as follows: $167,420.03 representing the balance of the $243,181.51 in rental arrears set forth in the September 1, 2015 stipulation, plus $15,982.42 balance of base rent due for August and September, 2016, $23,000.00 in base rent due for October, 2016, $16,563.98 in real estate taxes from July, 2016 to October, 2016, and $76,350.00 in accrued deferred rent payments detailed in para. 4 and 5 of the September 1, 2015 stipulation. See affidavit of Dunnie Lai annexed hereto.

19.    In addition, Great Canal has no interest in continuing its relationship with the Debtor, will not agree to any further payment plans, nor agree to any rent concessions that may be sought by the Debtor.

20.    Therefore, based on the foregoing facts and circumstances and the argument to follow, Great Canal's motion to modify, annul and/or lift the automatic stay should be granted.

## ARGUMENT

## RELIEF REQUESTED

21.    By this Motion, Great Canal seeks entry of an order modifying, annulling and/or lifting the automatic stay of Bankruptcy Code § 362 to (a) permit Great Canal to enforce the judgment of possession and execute on the warrant of eviction issued in the non-payment proceeding  (b) exercise the Great Canal's right of recoupment with respect to the Deposit Great Canal is holding under the Lease, and (c) take any further action which may be necessary to obtain possession of the Premises.

22.    Bankruptcy Code section 362(d), which governs relief from the automatic stay, provides in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

> (2) with respect to stay of an act against
> property under subsection (a) of this
> section, if—
> (A) the debtor does not have an equity in
> such property; and
> (B) such property is not necessary to an
> effective reorganization…
> 11 U.S.C. § 362(d).

23. As demonstrated herein, Great Canal is clearly entitled to relief from the automatic stay under Bankruptcy Code sections 362(d)(1) and (2).

24. Great Canal's Lease with the Debtor was terminated when the warrant of eviction was issued in the nonpayment proceeding.

25. Under New York law, issuance of the warrant of eviction cancels the lease and annuls the landlord-tenant relationship. See RPAPL § 749, subd. 3; *New York City Housing Authority v. Torres,* 61 A.D.2d 681, 403 N.Y.S.2d 527 (1978); *Iltit Assoc. v. Sterner,* 63 A.D.2d 600, 405 N.Y.S.2d 68 (1973); *Rocar Realty Northeast v. Jefferson Mall*, 38 A.D.3d 744, 833 N.Y.S.2d 522, 525 (2d Dep't 2007) ("The issuance of the warrant of eviction terminated any existing tenancy and annulled the landlord-tenant relationship by operation of law.") Termination of the Lease constitutes "cause" to modify the automatic stay.

26. As a general rule, the filing of a bankruptcy petition does not resurrect the lease which was terminated prepetition, and bankruptcy court does not have power to resurrect the lease. See *In re Éclair Bakery Ltd,* 255 B.R.121 (Bankr.S.D.N.Y.1987); Seven Stars Restaurant, Inc., 122 B.R. at 218; I*n re Darwin*, 22

B.R. 259, 263 (Bankr. E.D.N.Y. 1982); *In re Acorn Investments*, 8 B.R. 506 (Bankr. S.D. Cal. 1981).

27.   The termination of debtor's lease and termination of the landlord-tenant relationship, prior to commencement of Chapter 11 case, upon issuance of warrant of eviction in accordance with governing New York law, constituted "cause" for lifting stay to allow landlord to exercise its rights in leased property, where no state court litigation was pending to vacate warrant of eviction.   See *In re Hudson Transfer Group, Inc.,* 245 B.R. 456 (Bankr.S.D.N.Y.2000);*re Éclair Bakery Ltd,* 255 B.R.121 (Bankr.S.D.N.Y.1987).

28.   Modification of the automatic stay may be granted by a bankruptcy court under section 362(d)(1) to permit a creditor to proceed with litigation in another forum in an attempt to regain possession of its collateral or property for cause. See *In re Burger Boys, Inc.,* 183 B.R. 682 (S.D.N.Y. 1994); I*n re Diplomat Electronics Corp.,* 82 B.R. 688 (Bankr. S.D.N.Y. 1988)

29.   Cause also exists to modify the stay because the Debtor cannot assume the Lease because it has been terminated. The Lease is not property of the Debtor's estate under Bankruptcy Code section 541.  Section 541 (b)(2) specifically excludes from property of the estate "any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before

commencement of the case under this title, and...... during the case." 11 U.S.C. § 541(b)(2).

30. A lease may be terminated under New York law by operation of a conditional limitation. *See In re Policy Realty Corp.*, 242 B.R. 121 (S.D.N.Y. 1999). A conditional limitation can be imposed by either a default notice or a stipulation of settlement.

31. A lease terminated prior to the bankruptcy case cannot be assumed, and the inability to assume a lease constitutes "cause" for relief from the stay under Bankruptcy Code section 362(d)(1). *See In re Seven Stars Restaurant, Inc.*, 122 B.R. 213 at 218.

32. Here, the warrant of eviction was issued on April 20, 2015. Execution of the warrant was stayed pursuant to the terms of the Stipulation of Settlement dated September 1, 2015 and filed with the Court. The Debtor failed to make the required payments under the stipulation for August and September, 2016, which resulted in the stay of eviction being immediately lifted, and allowing for execution of the warrant.

33. There is no pending action in the nonpayment proceeding, and the Debtor has no rights to vacate the warrant of eviction and the September 1, 2015 stipulation of settlement.

34. The Court of Appeals has long held that while a court retains control over stipulations and has the power to relieve the parties from their terms, a stipulation must not be set aside

without a showing of good cause sufficient to set aside a contract such as fraud, collusion, mistake, accident or some other ground of the same nature. *Hallock v. State of New York*, 64 N.Y.2d 224, 485 N.Y.S.2d 510, 474 N.E.2d 1178 (1984); *Matizini v. Joy*, 60 N.Y.2d. 835, 470 N.Y.S.2d 131, 458 N.E.2d 372 (1983).

35.   This rule of law has been uniformly applied. *Nash v. Y and T Distributors,* 207 A.D.2d 779, 616 N.Y.S.2d 402 (2nd Dept. 1994); *Alert Medical Personnel v. Rera*, 203 A.D.2d 401, 612 N.Y.S.2d 928 (2nd Dept. 1994); *Matter of Marturano*, 203 A.D.2d 295, 612 N.Y.S.2d 893 (2nd Dept. 1994); *Rapp v. Briarcliff Contemporaries, Inc.*, 190 A.D.2d 785, 593 N.Y.S.2d 547 (2nd Dept. 1993).

36.   The Court of Appeals has so held, stating, e.g., in, "The parties to a lawsuit are free to chart their own course at trial...and may fashion the basis upon which a particular controversy may be resolved...[citations omitted]" *Cullen v. Naples*, 31 N.Y.2d 818, 339 N.Y.S.2d 464 (1972) and in *the Matter of New York, L&WRR*, 98 NY 447, "Parties by their stipulation may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce."

37.   Here, the warrant of eviction issued on April 20, 2015 cancelling the lease and terminating the landlord-tenant relationship between the Debtor and Great Canal. Thereafter, the Debtor with the assistance of counsel entered into two separate

stipulations of settlement, resolving all issues in the nonpayment proceeding, in which the warrant of eviction was stayed but remained in effect pending the Debtor's payment of rent arrears.  The Debtor failed to make the required payment under the stipulation, and is subject to eviction.  This chapter 11 filing nor can this Court revive the Debtor's lease and landlord-tenant relationship.

38.  Therefore, Great Canal submits that there is sufficient cause to modify and lift the automatic stay for the specific purposes indicated herein.

39.  In addition, Great Canal is entitled to relief under section 362(d)(2) because the Debtor has no equity in the Premises and the Premises is not necessary for an effective reorganization.

40.  First, the Debtor is a lessee under a terminated lease and therefore has no equity in the Premises. Second, the Debtor has not demonstrated that it has a viable opportunity to reorganize in chapter 11. The Debtor filed chapter 11 after the Lease was terminated and has no enforceable right to continue to remain in the Premises.

41.  For all of the foregoing reasons, Great Canal submits that cause exists to modify the automatic stay under Bankruptcy Code sections 362(d)(1) and (d)(2) to permit Great Canal to execute on the warrant of eviction to recover possession of the Premises.

42.  No prior request for the relief sought herein has been made to this or any other Court by Great Canal.

## CONCLUSION

**WHEREFORE,** Great Canal respectfully requests that this Court enter an order substantially in the form annexed hereto as **Exhibit "F"** granting the relief sought in this motion and such further relief as the Court deems appropriate.

Dated:    New York, New York
          October 14, 2016          Respectfully Submitted,

                                    By: _____
                                        Steven T. Gee, Esq.
                                        STEVEN T. GEE, P.C.
                                        Attorney for Creditor
                                        Great Canal Realty Corp.
                                        121 Chrystie Street
                                        New York, New York 10002
                                        Telephone (212) 334-8838
                                        Facsimile (212)732-1043

# AFFIDAVIT OF DUNNIE LAI

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------
In Re:                                    Chapter 11

                                          Case No. 16-12787(MKV)
CREATIVE BGRS, INC. D/B/A BURGER KING

               Debtor.

--------------------------------------

AFFIDAVIT OF DUNNIE LAI IN SUPPORT OF
GREAT CANAL REALTY CORP. SEEKING ENTRY OF ORDER PURSUANT
TO 11 U.S.C.SECTION 362 GRANTING RELIEF FROM AUTOMATIC STAY

State of New York        )
                         ) ss:
County of New York       )

Dunnie Lai, being duly sworn, deposes and says:

     1.   I am an officer of the creditor, Great Canal Realty
Corp., a domestic corporation (hereinafter referred to as "Great
Canal"), and the owner and landlord of the real property located
at and known as 273 Canal Street, New York, New York.  A true
copy of the deed for the property is located hereto as **Exhibit
"A"**.

     2.   I submit this affidavit in support of Great Canal's
motion to lift the automatic stay in this proceeding.

     3.   The Debtor Creative Bgrs, Inc. (hereinafter referred
to as the "Debtor"), was the tenant of the ground level and
basement commercial space located at 273 Canal Street, New York
(hereinafter referred to as the "premises").  A true copy of the
lease is annexed hereto as **Exhibit "B"**.

4.    On or about February 23, 2015, Great Canal brought a summary nonpayment proceeding against the Debtor due to its failure to pay the rent under the lease for the premises.

5.    The Debtor failed to answer or appear in the nonpayment proceeding and a judgment of possession and warrant of eviction was granted in favor of Great Canal against the Debtor.  A true copy of the Judgment and warrant of eviction is annexed hereto as **Exhibit "C"**.

6.    Thereafter, the Marshall's Notice of Eviction was served upon the Debtor.

**7.**    On April 29, 2015, the parties entered into and filed with the court a stipulation of settlement, in which execution of the warrant was stayed for the Debtor to pay the rent arrears of $182,891.91 pursuant to a payment schedule.  Each party was represented by counsel. A true copy of this Stipulation is annexed hereto as **Exhibit "D"**.

8.    The Debtor failed to comply with the stipulation, resulting in service of the Marshall's Notice of Eviction.

9.    On September 1, 2015, the parties entered into and filed with the Court a second stipulation of settlement, in which execution of the warrant was stayed for the Debtor to pay the rent arrears of $243,181.51 pursuant to another payment schedule. Each party was again represented by counsel. A true copy of this Stipulation is annexed hereto as **Exhibit "E"**.

10.   Pursuant to paragraph 6 of the stipulation, upon the Debtor's default, the stay of eviction was immediately lifted and the warrant could be executed on service of the Marshall's notice of eviction, and all rental arrears and any accruing rent would become due and owing.

11.   The Debtor failed again to comply with the stipulation by not making the required payments for August, 2016 and September, 2016. More particularly, the Debtor was required to pay $23,000.00 each month but instead paid $15,017.58 in August, and $15,000.00 in September, 2016.

12.   As a result, Great Canal had the Marshall serve the Notice of Eviction on the Debtor, and the eviction was scheduled for October 6, 2016.

13.   The Debtor subsequently brought this proceeding prior to the eviction.

14.   For the Court's information, the Debtor currently owes a total of $299,316.43 in rental arrears to Great Canal, which is broken down as follows: $167,420.03 representing the balance of the $243,181.51 in rental arrears set forth in the September 1, 2015 stipulation, plus $15,982.42 balance of base rent due for August and September, 2016, $23,000.00 in base rent due for October, 2016, $16,563.98 in real estate taxes from July, 2016 to October, 2016, and $76,350.00 in accrued deferred rent

payments detailed in para. 4 and 5 of the September 1, 2015 stipulation.

15. Great Canal also has no interest in continuing its relationship with the Debtor, will not agree to any further payment plans, nor agree to any rent concessions that may be sought by the Debtor.

16. Therefore, based on the foregoing facts and circumstances, I respectfully request that the Court grant this motion to lift the automatic stay and allow Great Canal to execute on the warrant of eviction against the Debtor.

Sworn to before me on the
12th day of October, 2016

_____          _____
Notary Public                                        Dunnie Lai


STEVEN T. GEE
Notary Public, State of New York
No. 02GE5017894
Qualified in New York County
Commission Expires Sept. 13, 20__

# EXHIBIT A

REEL 3 2 7 3 PG 2 3 3 8

# CITY REGISTER RECORDING AND ENDORSEMENT PAGE

| TOTAL NUMBER OF PAGES IN DOCUMENT INCLUDING THIS PAGE ► | 4 |

COUNTY OF ►   New York

THIS PAGE FORMS PART OF THE INSTRUMENT

| Block ▼ | Lots - ONLY IF ENTIRE LOT ▼ | | Partial Lots ▼ |
|---|---|---|---|
| 209 | 34 | | P/O |

| Premises ▼ | NAME ▼ |
|---|---|
| 31 HOWARD STREET A/K/A 273 CANAL STREET | George Lee, ESQ. |
| Title/Agent Company Name ▼ | ADDRESS ▼  11 Mott Street |
| SUMMIT ASSOCIATES | RECORD & RETURN TO |
| Title Company Number ▼  M-418893A | CITY ▼ New York   STATE ▼ N.Y.   ZIP ▼ 10013 |

| PARTY 1 ► | 273 canal Llc |
| ADDITIONAL PARTY 1 ► | 3 pay street Suite 200 |
| PARTY 2 ► | Great canal Realty Corp |
| ADDITIONAL PARTY 2 ► | 111 mott street. N.Y. |

☐ CHECK THIS BOX IF THERE ARE MORE THAN 2 OF EITHER PARTY

**CITY REGISTER'S USE ONLY · DO NOT WRITE BELOW THIS LINE**

Examined by [a]: SP

| Mtge Tax Serial No. | |
| Mtge Amount | $ |
| Taxable Amount | $ |
| Exemption (✓) | YES ☐   NO ☐ |
| Type: | [339EE]   [255]   [OTHER] |
| Dwelling Type: | [1 to 2]  [3]  [4 to 6]  [OVER 6] |

**TAX RECEIVED ON ABOVE MORTGAGE ▼**

| County (basic) | $ |
| City (Add'l) | $ |
| Spec Add'l | $ |
| TASF | $ |
| MTA | $ |
| NYCTA | $ |
| TOTAL TAX | $ |
| Apportionment Mortgage (✓) | YES ☐   NO ☐ |

City Register
Serial Number ►   017298

| Indexed By [a]: | Verified By [a]: |

Block(s) and Lot(s) verified by (✓):  SP
Address ☑   Tax Map ☐
Extra Block(s)   Lot(s)

| Recording Fee | A $37 |
| Affidavit Fee (C) | $ |
| RPTT Fee (R) | $25 |
| HPDA ☑   HPD-C ☐ |

New York State Real Estate Transfer Tax ▼
$ 20,000

Serial Number ►   003568

New York City Real Property Transfer Tax
Serial Number ►   D 2543

## RECORDED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK

2001 APR 18  A 10:05

25 × 0

( Deed )

M. 49893

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

THIS INDENTURE, made the 1st day of Feb, 2001
BETWEEN

        273 CANAL, LLC
        c/o LIU & CHOY
        3 PELL STREET, SUITE 200
        NEW YORK, NY 10013

party of the first part, and

        GREAT CANAL REALTY CORP.,
        C/O GEORGE LEE, ESQ.
        111 MOTT STREET
        NEW YORK, NY 10013

party of the second part,
WITNESSETH, that the party of the first part, in consideration of TEN   ( $10.00 )
                                                   dollars
paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs
or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate,
lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as
follows:

           SEE SCHEDULE "A" ANNEXED AND MADE A PART HEREOF

SAID premises is know by the street address 273 CANAL STREET a/k/a 31 HOWARD STREET, Block 209,
Lot 34

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads
abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all
the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the
premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of
the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything
whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the
first part will receive the consideration for this conveyance and will hold the right to receive such consideration
as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same
first to the payment of the cost of the improvement before using any part of the total of the same for any other
purpose.
The word "party" shall be construed as if it read "parties" when ever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above
written.

IN PRESENCE OF:

                          273 CANAL, LLC

                          IRWIN K. LIU, MANAGING MEMBER

Standard N.Y.S.T.U. Form 8002 - Bargain and Sale Deed, with Covenant against Grantor's Acts – Uniform Acknowledgment
Form 3290

25 × 10

**TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE IN NEW YORK STATE**

| | |
|---|---|
| State of New York, County of   New York          ss: | State of New York, County of                                 ss: |
| On the  1st  day of  Feb       in the year 2001<br>before me, the undersigned, personally appeared<br>            IRWIN K. LIU | On the      day of            in the year<br>before me, the undersigned, personally appeared |
| Personally known to me or proved to me on the basis of<br>satisfactory evidence to be the individual(s) whose name(s) is<br>(are) subscribed to the within instrument and acknowledged to<br>me that he/she/they executed the same in his/her/their<br>capacity(ies), and that by his/her/their signature(s) on the<br>instrument, the individual(s) or the person upon behalf of<br>which the individual(s) acted, executed the instrument. | personally known to me or proved to me on the basis of<br>satisfactory evidence to be the individual(s) whose name(s) is<br>(are) subscribed to the within instrument and acknowledged to<br>me that he/she/they executed the same in his/her/their<br>capacity(ies), and that by his/her/their signature(s) on the<br>instrument, the individual(s), or the person upon behalf of which<br>the individual(s) acted, executed the instrument. |
| _____<br>(signature and office of individual taking acknowledgment) | _____<br>(signature and office of individual taking acknowledgment) |

CINDY J. LIU
NOTARY PUBLIC, State of New York
No. 4907830
Qualified in Nassau County
Commission Expires Jan. 11, 2002

**TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE**

State (or District of Columbia, Territory, or Foreign Country) of                                 ss:

On the      day of            in the year            before me, the undersigned, personally appeared

Personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)  is (are)
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument, and that such individual made such appearance before the undersigned in the

_____            In  _____
(insert the City or other political subdivision)            (and insert the State or Country or other place the acknowledgment was taken)

_____
(signature and office of individual taking acknowledgment)

| THE<br>LAWYER'S<br>CHOICE | *Summit Associates*<br>TITLE SERVICES NATIONWIDE<br>18 BOWERY, SUITE 200<br>NEW YORK, N.Y. 10013<br>Tel: (212) 608-5866 • Fax: (212) 227-8746 |
|---|---|

**BARGAIN AND SALE DEED**
**WITH COVENANT AGAINST GRANTOR'S ACTS**

Title No.

273 CANAL, LLC

TO

GREAT CANAL REALTY CORP.

SECTION:
BLOCK              209
LOT                34
COUNTY OR TOWN     MANHATTAN
STREET ADDRESS:    31 HOWARD ST.
                   NY, NY10013

RETURN BY MAIL TO:

GEORGE LEE, ESQ.
11 MOTT STREET
NEW YORK, NY 10013

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

25×

REEL 3 2 73 PG 2 3 4 1

Title No.   435-M/Q-19893
(M/Q-419893)

## SCHEDULE A

PARCEL A

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Northerly side of Canal Street, distant 152 feet, 2 inches Easterly from the corner formed by the intersection of the said Northerly side of Canal Street with the Easterly side of Broadway, which point is at the intersection of the Westerly face of the Westerly wall of the building on the premises herein described;

RUNNING THENCE Easterly along said Northerly side of Canal Street 24 feet 8 inches;

THENCE Northerly at right angles with said Northerly side of Canal Street and through a party wall 102 feet;

THENCE Easterly parallel with Southerly side of Howard Street 5 feet 6 inches to the center line of a certain party wall;

THENCE Northerly through the center of said party wall 100 feet 1 -3/4 inches to said Southerly side of Howard Street;

THENCE Westerly along the said Southerly side of Howard Street 24 feet 4 -3/4 inches to the Westerly face of the Westerly independent wall of the building on the premises herein described, which point is distant 173 feet 6 -3/4 inches Easterly from the Easterly side of Broadway measured along said Southerly side of Howard Street;

THENCE Southerly along the Westerly face of said independent wall and along a line which on its Easterly side forms an angle of 91 degrees 29 minutes 10 seconds with said Southerly side of Howard Street 100 feet 10 -1/4 inches;

THENCE Westerly along a line which on its Northerly side forms an angle of 99 degrees 37 minutes 20 seconds with the said last mentioned course 6 feet 1 inch to its intersection with a line continued Northerly along the Westerly face of the Westerly wall of the building on the premises herein described;

THENCE Southerly along the Westerly face of on said last mentioned wall and along a line which on its Easterly side forms an angle of 102 degrees 15 minutes 30 seconds with the last mentioned course, 96 feet 4 -3/4 inches to said Northerly side of said Canal Street, at the point or place of BEGINNING.

6

# EXHIBIT "B"

---

**STANDARD FORM OF STORE LEASE**
The Real Estate Board of New York, Inc.

5/5/80 B

**Agreement of Lease,** made as of this   1st   day of *August*   19 2011, between
Great Canal Realty Corp.
party of the first part, hereinafter referred to as OWNER, and

Creative Bgrs Inc.   party of the second part, hereinafter referred to as TENANT,

**Witnesseth:** Owner hereby leases to Tenant and Tenant hereby hires from Owner

Ground level and basement commercial space

in the building known as   273 Canal Street, New York, New York 10013
in the Borough of  Manhattan   , City of New York, for the term of Ten (10) Years and Option in
(or until such term shall sooner cease and expire as hereinafter provided) to commence on the  See attached Rider
day of   , and to end on the
day of
both dates inclusive, at an annual rental rate of

See Rent Schedule in attached Rider

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any set off or deduction whatsoever, except that Tenant shall pay the first   monthly installment(s) on the execution hereof (unless this lease be a renewal).

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby convenant as follows:

**Rent**  1. Tenant shall pay the rent as above and as hereinafter provided.
**Occupancy**  2. Tenant shall use and occupy demised premises for

Fast Food Restaurant

and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and shall keep show windows and signs in a neat and clean condition.

**Alterations:**  3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner and Tenant agrees to carry and will cause Tenant's contractors and sub-contractors to carry such workman's compensation, general liability, personal and property damage insurance as Owner may require. If any mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have been done, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within ten days thereafter, at Tenant's expense, by filing the bond required by law. All fixtures and all paneling, partitions, railings and like installations, installed in the premises at any time, either by Tenant or by Owner in Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's rights thereto and to have them removed by Tenant, in which event, the same shall be removed from the premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this article shall be construed to give Owner title to or to prevent Tenant's removal of trade fixtures, moveable office furniture and equipment, but upon removal of any such from the premises or upon removal of other installations as may be required by Owner, Tenant shall immediately at its expense, repair and restore the premises to the condition existing prior to installation and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the premises by Owner at Tenant's expense.

**Repairs**  4. Owner shall maintain and repair the public portions of the building, both exterior and interior, except that if Owner allows Tenant to erect on the outside of the building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of Tenant, Tenant shall maintain such exterior installations in good appearance and shall cause the same to be operated in a good and workmanlike manner and shall make all repairs thereto necessary to keep same in good order and condition, at Tenant's own cost and expense, and shall cause the same to be covered by the insurance provided for hereafter in Article 8. Tenant shall, throughout the term of this lease, take good care of the demised premises and the fixtures and appurtenances therein, and the sidewalks adjacent thereto, and at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear, obsolescence and damage from the elements, fire or other casualty, excepted. If the demised premises be or become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Owner. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building including the erection or operation of any crane, derrick or sidewalk shed, or in or to the demised premises or the fixtures, appurtenances or equipment thereof. The provisions of this article 4 with respect to the making of repairs shall not apply in the case of fire or other casualty which are dealt with in article 9 hereof.

**Window Cleaning:**  5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor Law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance:**  6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant shall, at Tenant's sole cost and expense, promptly comply with all present and future laws, orders and

regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters or the Insurance Services Office, or any similar body which shall impose any violation, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the premises, if the premises are on the street level, whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building if arising out of Tenant's use or manner of use of the premises or the building (including the use permitted under the lease). Except as provided in Article 29 hereof, nothing herein shall require Tenant to make structural repairs or alterations unless Tenant has by its manner of use of the demised premises or method of operation therein, violated any such laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant shall not do or permit any act or thing to be done in or to the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Owner. Tenant shall pay all costs, expenses, fines, penalties or damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this article. If the fire insurance rate shall, at the beginning of the lease or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which shall have been charged because of such failure by Tenant, to comply with the terms of this article. In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" of rate for the building or demised premises issued by a body making fire insurance rates applicable to said premises shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rate then applicable to said premises.

**Subordination:** 7. This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which demised premises are a part and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be selfoperative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease or the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall execute promptly any certificate that Owner may request.

**Tenant's Liability Insurance Property Loss, Damage, Indemnity:** 8. Owner or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of or damage to any property of Tenant by theft or otherwise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servants or employees. Owner or its agents will not be liable for any such damage caused by other tenants or persons in, upon or about said building or caused by operations in construction of any private, public or quasi public work. Tenant agrees, at Tenant's sole cost and expense, to maintain general public liability insurance in standard form in favor of Owner and Tenant against claims for bodily injury or death or property damage occurring in or upon the demised premises, effective from the date Tenant enters into possession and during the term of this lease. Such insurance shall be in an amount and with carriers acceptable to the Owner. Such policy or policies shall be delivered to the Owner. On Tenant's default in obtaining or delivering any such policy or policies or failure to pay the charges therefor, Owner may secure or pay the charges for any such policy or policies and charge the Tenant as additional rent therefor. Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall not be reimbursed by insurance, including reasonable attorneys fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agents, contractors, employees, invitees, or licensees, of any covenant on condition of this lease, or the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees. Tenant's liability under this lease extends to the acts and omissions of any subtenant, and any agent, contractor, employee, invitee or licensee of any subtenant. In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by Counsel approved by Owner in writing, such approval not to be unreasonably withheld.

**Destruction, Fire and Other Casualty:** 9. (a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Owner and this lease shall continue in full force and effect except as hereinafter set forth. (b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be repaired by and at the expense of Owner and the rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the premises which is usable. (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent shall be proportionately paid up to the time of the casualty and thenceforth shall cease until the date when the premises shall have been repaired and restored by Owner, subject to Owner's right to elect not to restore the same as hereinafter provided. (d) If the demised premises are rendered wholly unusable or (whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then, in any of such events, Owner may elect to terminate this lease by written notice to

Tenant given within 90 days after such fire or casualty specifying a date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the premises without prejudice however, to Owner's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any such casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Owner that the premises are substantially ready for Tenant's occupancy. (e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty. Notwithstanding the foregoing, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, Owner and Tenant each hereby releases and waives all right of recovery against the other or any one claiming through or under each of them by way of subrogation or otherwise. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance and also, provided that such a policy can be obtained without additional premiums. Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements, or appurtenances removable by Tenant and agrees that Owner will not be obligated to repair any damage thereto or replace the same. (f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

**Eminent Domain:** 10. If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim for the value of any unexpired term of said lease.

**Assignment, Mortgage, Etc.:** 11. Tenant, for itself, its heirs, distributees, executors, administrators, legal representatives, successors and assigns expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Owner in each instance. If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Owner may, after default by Tenant, collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of the covenant, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Owner to an assignment or underletting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting.

**Electric Current:** 12. Rates and conditions in respect to submetering or rent inclusion, as the case may be, to be added in RIDER attached hereto. Tenant covenants and agrees that at all times its use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation and Tenant may not use any electrical equipment which, in Owner's opinion, reasonably exercised, will overload such installations or interfere with the use thereof by other tenants of the building. The change at any time of the character of electric service shall in no wise make Owner liable or responsible to Tenant, for any loss, damages or expenses which Tenant may sustain.

**Access to Premises:** 13. Owner or Owner's agents shall have the right (but shall not be obligated) to enter the demised premises in any emergency at any time, and, at other reasonable times, to examine the same and to make such repairs, replacements and improvements as Owner may deem necessary and reasonably desirable to any portion of the building or which Owner may elect to perform, in the premises, following Tenant's failure to make repairs or perform any work which Tenant is obligated to perform under this lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities. Tenant shall permit Owner to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes and conduits therein, provided they are within the walls, Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction nor shall the Tenant be entitled to any abatement of rent while such work is in progress nor to any damages by reason of loss or interruption of business or otherwise. Throughout the term hereof Owner shall have the

☞ Rider to be added if necessary.

right to enter the demised premises at reasonable hours for the purpose of showing the same to prospective purchasers or mortgagees of the building, and during the last six months of the term for the purpose of showing the same to prospective tenants and may, during said six months period, place upon the premises the usual notice "To Let" and "For Sale" which notices Tenant shall permit to remain thereon without molestation. If Tenant is not present to open and permit an entry into the premises, Owner or Owner's agents may enter the same whenever such entry may be necessary or permissible by master key or forcibly and provided reasonable care is exercised to safeguard Tenant's property and such entry shall not render Owner or its agents liable therefor, nor in any event shall the obligations of Tenant hereunder be affected. If during the last month of term Tenant shall have removed all or substantially all of Tenant's property therefrom, Owner may immediately enter, alter, renovate or redecorate the demised premises without limitation or abatement of rent, or incurring liability to Tenant for any compensation and such act shall have no effect on this lease or Tenant's obligations hereunder. Owner shall have the right at any time, without the same constituting an eviction and without incurring liability to Tenant therefor to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets, or other public parts of the building and to change the name, number or designation by which the building may be known.

**Vault,**
**Vault Space,**
**Area:**
14.  No vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the building. All vaults and vault space and all such areas not within the property line of the building, which Tenant may be permitted to use and/or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault or area shall be paid by Tenant.

**Occupancy:**
15.  Tenant will not at any time use or occupy the demised premises in violation of, Articles 2 or 37 hereof, or of, the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the premises and accepts them as is, subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the premises and Tenant agrees to accept the same subject to violations whether or not of record.

**Bankruptcy:**
16. (a)  Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Landlord by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant as the debtor; or (2) the making by Tenant of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant as and for liquidated damages an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demise premises for the same period. In the computation of such damages the difference between any installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four per cent (4%) per annum. If such premises or any part thereof be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such reletting shall be deemed to be the fair and reasonable rental value for the part or the whole of the premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

**Default:**
17. (1)  If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent; or if the demised premises become vacant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be rejected under Section 365 of Title II of the U.S. Code (Bankruptcy Code); or if Tenant shall fail to move into or take possession of the premises within fifteen (15) days after the commencement of the term of this lease, of which

fact Owner shall be the sole judge; then, in any one or more of such events, upon Owner serving a written five (5) days notice upon Tenant specifying the nature of said default and upon the expiration of said five (5) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said five (5) day period, and if Tenant shall not have diligently commenced curing such default within such five (5) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, then Owner may serve a written three (3) days notice of cancellation of this lease upon Tenant, and upon the expiration of said three (3) days, this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such three (3) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein or any item of additional rent herein mentioned or any part of either or in making any other payment herein required; then and in any of such events Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of demised premises and remove their effects and hold the premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end.

**Remedies of**
**Owner and**
**Waiver of**
**Redemption:**
18.  In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent, and additional rent, shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration. (b) Owner may re-let the premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease and may grant concessions or free rent or charge a higher rental than that in this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Owner as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or convenanted to be paid and the net amount, if any, of the rents collected on account of the subsequent lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, attorneys' fees, brokerage, advertising and for keeping the demised premises in good order or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgement, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability. Owner shall in no event be liable in any way whatsoever for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rent collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant or any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws.

**Fees and**
**Expenses:**
19.  If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under or by virtue of any of the terms or provisions in any article of this lease, then, unless otherwise provided elsewhere in this lease, Owner may immediately or at any time thereafter and without notice perform the obligation of Tenant thereunder, and if Owner, in connection therewith or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to attorney's fees, in instituting, prosecuting or defending any actions or proceeding, such sums so paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within five (5) days of rendition of any bill or statement to Tenant therefor, and if Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages.

**No Repre-**
**sentations by**
**Owner:**
20.  Neither Owner nor Owner's agents have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation, or any other matter or thing affecting or related to the premises except as herein expressly set forth and no rights, easements or licenses are

acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition, and agrees to take the same "as is" and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

**End of Term:** 21.  Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, broom clean, in good order and condition, ordinary wear excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday unless it be a legal holiday in which case it shall expire at noon on the preceding business day.

**Quiet Enjoyment:** 22.  Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 33 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:** 23.  If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants, or if the premises are located in a building being constructed, because such building has not been sufficiently completed to make the premises ready for occupancy or because of the fact that a certificate of occupancy has not been procured or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any wise to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for the inability to obtain possession) until after Owner shall have given Tenant written notice that the premises are substantially ready for Tenant's occupancy. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease, Tenant covenants and agrees that such occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease, except as to the covenant to pay rent. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:** 24.  The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by owner of rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach and no provision of this lease shall be deemed to have been waived by Tenant unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed in acceptance of a surrender of said premises and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of said premises prior to the termination of the lease and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the premises.

**Waiver of Trial by Jury:** 25.  It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of or in any way connected with this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of said premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commences any summary proceeding for possession of the premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding.

**Inability to Perform:** 26.  This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no wise be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease or to supply or is delayed in supplying any service expressly or impliedly to be supplied or is unable to make, or is delayed in making any repair, additions, alterations or decorations or is unable to supply or is delayed in supplying any equipment or fixtures if Owner is prevented or delayed from so doing by reason of strike or labor troubles, government preemption in connection with a National Emergency or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency or by reason of the conditions of supply and demand which have been or are affected by war or other emergency, or when, in the judgement of Owner, temporary interruption of such services is necessary by reason of accident, mechanical breakdown, or to make repairs, alterations or improvements.

**Bills and Notices:** 27.  Except as otherwise in this lease provided, a bill, statement, notice or communication which Owner may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if, in writing, delivered to Tenant personally or sent by registered or certified mail addressed to Tenant at the building of which the demised premises form a part or at the last known residence address or business address of Tenant or left at any of the aforesaid premises addressed to Tenant, and the time of the rendition of such bill or statement and of the giving of such notice or communication shall be deemed to be the time when the same is delivered to Tenant, mailed, or left at the premises as herein provided. Any notice by Tenant to Owner must be served by registered or certified mail addressed to Owner at the address first hereinabove given or at such other address as Owner shall designate by written notice.

**Water Charges:** 28.  If Tenant requires, uses or consumes water for any purpose in addition to ordinary lavatory purposes (of which fact Tenant constitutes Owner to be the sole judge) Owner may install a water meter and thereby measure Tenant's water consumption for all purposes. Tenant shall pay Owner for the cost of the meter and the cost of the installation thereof and throughout the duration of Tenant's occupancy Tenant shall keep said meter and installation equipment in good working order and repair at Tenant's own cost and expense. Tenant agrees to pay for water consumed, as shown on said meter as and when bills are rendered. Tenant covenants and agrees to pay the sewer rent, charge or any other tax, rent, levy or charge which now or hereafter is assessed, imposed or a lien upon the demised premises or the realty of which they are part pursuant to law, order or regulation made or issued in connection with the use, consumption, maintenance or supply of water, water system or sewage or sewage connection or system. The bill rendered by Owner shall be payable by Tenant as additional rent. If the building or the demised premises or any part thereof be supplied with water through a meter through which water is also supplied to other premises Tenant shall pay to Owner as additional rent, on the first day of each month,  %  %
($    ) of the total meter charges, as Tenant's portion. Independently of and in addition to any of the remedies reserved to Owner hereinabove or elsewhere in this lease. Owner may sue for and collect any monies to be paid by Tenant or paid by Owner for any of the reasons or purposes hereinabove set forth.   *See attached Rider

**Sprinklers:** 29.  Anything elsewhere in this lease to the contrary notwithstanding, If the New York Board of Fire Underwriters or the Insurance Services Office or any bureau, department or official of the federal, state or city government require or recommend the installation of a sprinkler system or that any changes, modifications, alterations, or additional sprinkler heads or other equipment be made or supplied in an existing sprinkler system by reason of Tenant's business, or the location of partitions, trade fixtures, or other contents of the demised premises, or for any other reason, or if any such sprinkler system installations, changes, modifications, alterations, additional sprinkler heads or other such equipment, become necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the fire insurance rate set by any said Exchange or by any fire insurance company. Tenant shall, at Tenant's expense, promptly make such sprinkler system installations, changes, modifications, alterations, and supply additional sprinkler heads or other equipment as required whether the work involved shall be structural or non-structural in nature. Tenant shall pay to Owner as additional rent the sum of $    , on the first day of each    month during the term of this lease, as Tenant's portion of the contract price for sprinkler supervisory service.

**Heat, Cleaning:** 30.  [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX] Tenant shall at Tenant's expense, keep demised premises clean and in order, to the satisfaction of Owner, and if demised premises are situated on the street floor, Tenant shall, at Tenant's own expense, make all repairs and replacements to the sidewalks and curbs adjacent thereto, and keep said sidewalks and curbs free from snow, ice, dirt and rubbish. Tenant shall pay to Owner the cost of removal of any of Tenant's refuse and rubbish from the building. Bills for the same shall be rendered by Owner to Tenant at such times as Owner may elect and shall be due and payable when

☞ Space to be filled in or deleted.

rendered, and the amount of such bills shall be deemed to be, and be paid as, additional rent. Tenant shall, however, have the option of independently contracting for the removal of such rubbish and refuse in the event that Tenant does not wish to have same done by employees of Owner. Under such circumstances, however, the removal of such refuse and rubbish by others shall be subject to such rules and regulations as, in the judgment of Owner, are necessary for the proper operation of the building.

**Security:** 31. Tenant has deposited with Owner the sum of $ *    as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent. Owner may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent or any other sum as to which Tenant is in default or for any sum which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the re-letting of the premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the Lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Owner shall have the right to transfer the security to the vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such security, and Tenant agrees to look to the new Owner solely for the return of said security; and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security and that neither Owner nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.
**\*See attached Rider**

**Captions:** 32. The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provision thereof.

**Definitions:** 33. The term "Owner" as used in this lease means only the Owner, or the mortgagee in possession, for the time being of the land and building (or the Owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales of said land and building or of said lease, or in the event of a lease of said building, or of the land and building, the said Owner shall be and hereby is entirely freed and relieved of all covenants and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties of their successors in interest, or between the parties and the purchaser, at any such sale, or the said lessee of the building, or of the land and building, that the purchaser or the lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Owner hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business days" as used in this lease shall exclude Saturdays (except such portion thereof as is covered by specific hours in Article 30 hereof), Sundays and all days designated as holidays by the applicable building service union employees service contract or by the applicable Operating Engineers contract with respect to H V A C service.

**Adjacent Excavation— Shoring:** 34. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, license to enter upon the demised premises for the purpose of doing such work as said person shall deem necessary to preserve the wall or the building of which demised premises form a part from injury or damage and to support the

**☞** Space to be filled in or deleted.

same by proper foundations without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:** 35. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with the Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Owner or Owner's agents, the parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. The right to dispute the reasonableness of any additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing upon Owner within ten (10) days after the giving of notice thereof. Nothing in this lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant and Owner shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

**Glass:** 36. Owner shall replace, at the expense of Tenant, any and all plate and other glass damaged or broken from any cause whatsoever in and about the demised premises. Owner may insure, and keep insured, at Tenant's expense, all plate and other glass in the demised premises for and in the name of Owner. Bills for the premiums therefor shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due from, and payable by, Tenant when rendered, and the amount thereof shall be deemed to be, and be paid as, additional rent.

**Pornographic Uses Prohibited:** 37. Tenant agrees that the value of the demised premises and the reputation of the Owner will be seriously injured if the premises are used for any obscene or pornographic purposes or any sort of commercial sex establishment. Tenant agrees that Tenant will not bring or permit any obscene or pornographic material on the premises, and shall not permit or conduct any obscene, nude, or semi-nude live performances on the premises, nor permit use of the premises for nude modeling, rap sessions, or as a so-called rubber goods shops, or as a sex club of any sort, or as a "massage parlor." Tenant agrees further that Tenant will not permit any of these uses by any sublessee or assignee of the premises. This Article shall directly bind any successors in interest to the Tenant. Tenant agrees that if at any time Tenant violates any of the provisions of this Article, such violation shall be deemed a breach of a substantial obligation of the terms of this lease and objectionable conduct. Pornographic material is defined for purposes of this Article as any written or pictorial matter with prurient appeal or any objects of instrument that are primarily concerned with lewd or prurient sexual activity. Obscene material is defined here as it is in Penal law §235.00.

**Estoppel Certificate:** 38. Tenant, at any time, and from time to time, upon at least 10 days prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Owner, a statement certifying that this lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates which the rent and additional rent have been paid, and stating whether or not there exists any defaults by Owner under this lease, and, if so, specifying each such default.

**Successors and Assigns:** 39. The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in this lease, their assigns.

Attached Rider is made a part hereof and incorporated herein.

**In Witness Whereof,** Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Witness for Owner:

..........................................................    ........................................ [L.S.]
Great Canal Realty Corp.
By:

Witness for Tenant:

..........................................................    ........................................ [L.S.]
Creative Bgrs Inc.
By:
Thang Pham
Pres

# ACKNOWLEDGMENTS

**CORPORATE OWNER**
STATE OF NEW YORK,     ss.:
County of

On this          day of                    , 19     , before me

personally came
to me known, who being by me duly sworn, did depose and say that he resides

in                                                                          :

that he is the                           of

the corporation described in and which executed the foregoing instrument, as
OWNER; that he knows the seal of said corporation; that the seal affixed to said in-
strument is such corporate seal; that it was so affixed by order of the Board of Direc-
tors of said corporation, and that he signed his name thereto by like order.

........................................

**INDIVIDUAL OWNER**
STATE OF NEW YORK,     ss.:
County of

On this          day of                    , 19     , before me

personally came

to me known and known to me to be the individual
described in and who, as OWNER, executed the foregoing instrument and
acknowledged to me that                              he executed the same.

........................................

**CORPORATE TENANT**
STATE OF NEW YORK,     ss.:
County of

On this          day of                    , 19     , before me

personally came
to me known, who being by me duly sworn, did depose and say that he resides

in                                                                          :

that he is the                           of

the corporation described in and which executed the foregoing instrument, as TEN-
ANT; that he knows the seal of said corporation; that the seal affixed to said instru-
ment is such corporate seal; that it was so affixed by order of the Board of Directors
of said corporation, and that he signed his name thereto by like order.

........................................

**INDIVIDUAL TENANT**
STATE OF NEW YORK,     ss.:
County of

On this          day of                    , 19     , before me

personally came

to me known and known to me to be the individual
described in and who, as TENANT, executed the foregoing instrument and
acknowledged to me that                              he executed the same.

........................................

## RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE IN ACCORDANCE WITH ARTICLE 35.

1. The sidewalks, entrances, driveways, passages, courts, elevators, vestibules, stairways, corridors or halls shall not be obstructed or encumbered by any Tenant or used for any purpose other than for ingress to and egress from the demised premises and for delivery of merchandise and equipment in a prompt and efficient manner using elevators and passageways designated for such delivery by Owner. There shall not be used in any space, or in the public hall of the building, either by any tenant or by jobbers, or others in the delivery or receipt of merchandise, any hand trucks except those equipped with rubber tires and safeguards.

2. If the premises are situated on the ground floor of the building, Tenant thereof shall further, at Tenant's expense, keep the sidewalks and curb in front of said premises clean and free from ice, snow, etc.

3. The water and wash closets and plumbing fixtures shall not be used for any purpose other than those for which they were designed or constructed.

4. Tenant shall not use, keep or permit to be used or kept any foul or noxious gas or substance in the demised premises, or permit or suffer the demised premises to be occupied or used in a manner offensive or objectionable to Owner or other occupants of the building by reason of noise, odors and/or vibrations or interfere in any way with other Tenants or those having business therein.

5. No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed by any Tenant on any part of the outside of the demised premises or the building or on the inside of the demised premises if the same is visible from the outside of the premises without the prior written consent of Owner, except that the name of Tenant may appear on the entrance door of the premises. In the event of the violation of the foregoing by any Tenant, Owner may remove same without any liability and may charge the expense incurred by such removal to Tenant or Tenants violating this rule. Signs on interior doors and directory tablet shall be inscribed, painted or affixed for each Tenant by Owner at the expense of such Tenant, and shall be of a size, color and style acceptable to Owner.

6. No Tenant shall mark, paint, drill into, or in any way deface any part of the demised premises or the building of which they form a part. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Owner,

and as Owner may direct. No Tenant shall lay linoleum, or other similar floor covering, so that the same shall come in direct contact with the floor of the demised premises, and, if linoleum or other similar floor covering is desired to be used an interlining of builder's deadening felt shall be first affixed to the floor, by a paste or other material, soluble in water, the use of cement or other similar adhesive material being expressly prohibited.

7. Freight, furniture, business equipment, merchandise and bulky matter of any description shall be delivered to and removed from the premises only on the freight elevators and through the service entrances and corridors, and only during hours and in a manner approved by Owner. Owner reserves the right to inspect all freight to be brought into the building and to exclude from the building all freight which violates any of these Rules and Regulations or the lease of which these Rules and Regulations are a part.

8. Owner reserves the right to exclude from the building between the hours of 6 P.M. and 8 A.M. and at all hours on Sundays, and holidays all persons who do not present a pass to the building signed by Owner. Owner will furnish passes to persons for whom any Tenant requests same in writing. Each Tenant shall be responsible for all persons for whom he requests such pass and shall be liable to Owner for all acts of such person.

9. Owner shall have the right to prohibit any advertising by any Tenant which, in Owner's opinion, tends to impair the reputation of Owner or its desirability as a building for store or offices, and upon written notice from Owner, Tenant shall refrain from or discontinue such advertising.

10. Tenant shall not bring or permit to be brought or kept in or on the demised premises, any inflammable, combustible or explosive fluid, material, chemical or substance, or cause or permit any odors of cooking or other processes, or any unusual or other objectionable odors to permeate in or emanate from the demised premises.

11. Tenant shall not place a load on any floor of the demised premises exceeding the floor load per square foot area which it was designed to carry and which is allowed by law. Owner reserves the right to prescribe the weight and position of all safes, business machines and mechanical equipment. Such installations shall be placed and maintained by Tenant at Tenant's expense in setting sufficient in Owner's judgement to absorb and prevent vibration, noise and annoyance.

## GUARANTY

The undersigned Guarantor guarantees to Owner, Owner's successors and assigns, the full performance and observance of all the agreements to be performed and observed by Tenant in the attached Lease, including the "Rules and Regulations" as therein provided, without requiring any notice to Guarantor of nonpayment or, nonperformance, or proof, or notice of demand, to hold the undersigned responsible under this guaranty, all of which the undersigned hereby expressly waives and expressly agrees that the legality of this agreement and the agreements of the Guarantor under this agreement shall not be ended, or changed by reason of the claims to Owner against Tenant of any of the rights or remedies given to Owner as agreed in the attached Lease. The Guarantor further agrees that this guaranty shall remain and

continue in full force and effect as to any renewal, change or extension of the Lease. As a Further inducement to Owner to make the Lease Owner and Guarantor agree that in any action or proceeding brought by either Owner or the Guarantor against the other on any matters concerning the Lease or of this guaranty that Owner and the undersigned shall and do waive trial by jury.

.................................................. Guarantor

Address 273 Canal Street, New York, New York 10013
Premises basement commercial space Ground level

Great Canal Realty Corp.

TO

Creative Bags Inc.

STANDARD FORM OF

**Store Lease**

The Real Estate Board of New York, Inc.
©Copyright 1979. All Rights Reserved.
Reproduction in whole or in part prohibited.

Dated                    19

Rent per Year     See attached Rider

Rent per Month     See attached Rider

Term Ten (10) years and Option in From attached Rider
To

Drawn by .............. Checked by ..............

Entered by ..............     Approved by ..............

**RIDER TO COMMERCIAL LEASE DATED AUGUST** *1st* **, 2011**
**Between Great Canal Realty Corp., Landlord**
**and Creative Bgrs Inc., as Tenant**
**for the Ground level and basement commercial space located at**
**273 Canal Street, New York, New York 10013**

### 40.    Rent Schedule

Tenant agrees to pay to Landlord at the place designated by the Landlord, without any prior demand thereof and without any deduction or set off whatsoever, fixed and minimum base rent at the following monthly rates in which shall not be diminished by virtue of any other provisions of this lease:

**A.**    During the first and second Lease Year, by payment of the sum of $25,000.00 in advance on the first day of each calendar month, annually $300,000.00;

**B.**    During the third and fourth Lease Year, by payment of the sum of $26,500.00 in advance on the first day of each calendar month, annually $318,000.00;

**C.**    During the fifth and sixth Lease Year, by payment of the sum of $28,090.00 in advance on the first day of each calendar month, annually $337,080.00;

**D.**    During the seventh and eighth Lease Year, by payment of the sum of $29,775.40 in advance on the first day of each calendar month, annually $357,304.80; and

**E.**    During the ninth and tenth Lease Year, by payment of the sum of $31,561.92 in advance on the first day of each calendar month, annually $378,743.04.

### 41.    Option:

The Tenant shall have a one (1) time option to renew this lease for a single term of five (5) years, at a minimum base rent equal to the fair market rental value of the premises for the first option year or $40,000.00 per month, which ever is greater, with annual increases of ten (10%) percent thereafter.

The option to renew shall be effective and enforceable only upon Tenant's compliance with each of the following conditions:

1)    The original Tenant stated herein must be in possession and has not assigned or subleased any portion of the Demised Premises;

2)    The Tenant must notify the Landlord in writing that they are exercising this option to renew no later than one hundred and eighty (180) days from the expiration date of this lease. This notice must be sent by certified mail, return receipt requested; and

3)    The Tenant must be in compliance with each and every covenant and/or obligation under this lease, including but limited to the payment of rent and additional rent, at the time Tenant provides written notice and thereafter until the effective date of the new term.

4)    The Tenant acknowledges and agrees that each condition stated herein above are material and essential to the effectiveness of this option and each condition **MUST** be timely and fully satisfied by the Tenant for the option to be effective and the Tenant's failure to so comply shall constitute an automatic forfeiture of this option to renew forever.

Initials _TV_

Notwithstanding the Tenant's compliance, the Landlord may void this option to renew, if the Landlord or any of its officers decide to use the Demised Premises for their own personal or corporate use upon the expiration of the lease. The Landlord shall advise the Tenant of such a decision at least thirty (30) days before the expiration of the lease; otherwise, the option can not be revoke, except as otherwise stated above.

## 42.   Commencement Date:

The term of this Lease shall commence on the latter of the following dates ("Commencement Date"): (i) on August 1, 2011, or (ii) the date the previous Tenant surrenders its tenancy and/or the Landlord obtains lawful possession of the Demised Premises, whose lease with the Landlord will expire on July 15, 2011. If the previous Tenant surrenders his tenancy to the Landlord prior to August 1, 2011, the obligations of the Tenant under this lease shall commence immediately; however the "Commencement Date" for purposes of setting an initial date when a "Lease Year" has started and then ended or when this Lease will expire shall be August 1, 2011. Any use and occupancy unpaid and accruing prior to the Commencement Date of this lease shall be satisfied by the undersigned Tenant. For purposes of this Lease, the term "Lease Year" shall mean a period of twelve (12) consecutive months during the Lease Term with the exception of the first Lease Year, which shall commence on the Commencement Date and end one year from the last day of the month in which the Rent Commencement Date shall occur except if the Rent Commencement Date occurs on the first day of a month, in which case the first Lease Year shall end on the day preceding the anniversary of the Rent Commencement Date. The second Lease Year shall begin on the first day of the month following the end of the first Lease Year and each subsequent Lease Year shall begin on the year anniversary of the commencement of the prior Lease Year.

## 43.   Security deposit:

The Tenant must tender four (4) months security to the landlord in the sum of $126,247.68. The Tenant shall tender $63,123.84 upon execution of this agreement; an additional $31,561.92 by the 1st day of the 1st anniversary of this lease; and an additional $31,561.92 by the 1st day of the 2nd anniversary of this lease.   Said security deposit of four (4) months to be held by the landlord in a non-interest bearing account. The Tenant agrees that they will tender additional security upon the increase of the monthly rent as set forth above, in order to maintain at least four (4) months security at all time during the term of this lease with the landlord.

## 44.   Percentage Rent:

In addition to the fixed minimum rent hereinabove provided, Tenant shall pay to Landlord, on or before the SIXTIETH (60th) day after the expiration of each of the Tenant's lease years during the term of this Lease, a percentage rent equal to SIX (6%) PERCENT of the gross sales, as hereinafter defined, made by Tenant on the Demised Premises during such lease year, less the amount of fixed minimum rent received thereof by Landlord from Tenant.

Initials _TY_

Percentage rent shall be computed separately with respect to each lease year and there shall be no carry- backs or carry—forwards with respect to any lease year.

The first lease year shall commence on the commencement date and shall terminate on the first anniversary of the last day of the month in which the commencement date occurs. Each lease year other than the first lease year shall commence on the date next following the expiration of the previous lease year and shall continue for a period of ONE (1) full year thereafter, except that the last lease year shall terminate on the expiration date.

A)    "GROSS SALES" DEFINED. The term "gross sales", as used in this lease, shall mean the aggregate of all moneys received by Tenant from all sales of foods, wares, merchandise and service to the public on the Demised Premises during the term hereof (including sales by Tenant's concessionaires and sublessees, and including net proceeds to Tenant from sales through vending machines) after deducting therefrom (i) all refunds, discounts and allowances made to customers by Tenant, its concessionaires and sublessees, (ii) any federal excise tax on such sales, and (iii) any amount of any city, county, state or federal sales, luxury, excise, or other tax on such sales which is both added to the selling price (or absorbed therein) and paid to the taxing authority by the Tenant, its concessionaires and sublessees, or any other impost or levy so payable and measured by the volume of sales of any particular item or items, whether such impost can be denominated "tax" or otherwise. There shall not be deducted therefrom, any income, excess profits, franchise or other taxes based upon or measured by income. The return or transfer of any goods or merchandise from one of Tenant's stores to another, or to any of Tenant's warehouses, shall not be deemed a sale, nor shall the delivery or consumption of food where there exists no intention to charge or collect for such delivery or consumption, as in the case of promotional meals, charity meals, and meals for employees; nor shall gross sales include tips for employees or the sale of Tenant's fixtures or equipment or all or substantially all of its stock—in—trade and merchandise at a sale other than at retail, nor shall gross sales include receipts for promotional sales where no profit is derived and it is intended to improve food sales,

B)    STATEMENTS. Tenant shall keep accurate records of all sales made on the premises in accordance with standard accounting practices applicable to Tenant's business, and shall furnish Landlord, as soon as possible and in any event within SIXTY (60) days after the termination of each lease year, a signed audited statement showing the total gross sales, as herein defined, on the Demised Premises for such lease year calculated as herein provided. Such annual statement shall be accepted as final and correct, except that Landlord (by a certified public accountant, selected by Landlord) shall have the right after the close of each lease year to examine and audit Tenant's records of sales made on the Demised Premises during such lease year, upon giving Tenant written notice to that effect within SIX (6) months following the original sub mission of statements by Tenant to Landlord. Such audit examination shall not be made more often than once for any year, and must be completed with all reasonable diligence. In the event such audit originated by Landlord reveals that the statements submitted by Tenant to Landlord are true and correct to the extent that no underpayment to Landlord exceeds ONE THOUSAND ($1,000.00) DOLLARS, then in such event the entire expense of said audit shall be the responsibility of the Landlord; however, in the event that a discrepancy of ONE THOUSAND ($1,000.00) DOLLARS or more is revealed and such discrepancy reveals that the Tenant failed in its obligation to submit acceptable statements then, in that event, the entire cost

Initials ___

of the audit originated by the Landlord shall be the responsibility of the Tenant and the Tenant hereby agrees to promptly pay the Certified Public Accountant performing the described audit for services rendered. In addition, the Landlord shall be entitled to receive, as liquidated damages, EIGHTEEN (18%) PERCENT per annum interest on the amount of unpaid percentage rents accruing from the day upon which Landlord should have received the percentage rent to the day upon which the Tenant actually pays the principal amount due to Landlord. Upon termination of this Lease, by lapse of time or otherwise, Tenant shall report to Landlord as "gross sales," the unpaid balance of all credit sales, excluding only those past due more than ONE ( 1 ) year and those balances which have been written of f Tenants books as uncollectible.

Tenant further agrees to supply Landlord with written and signed monthly statements of gross sales, as defined herein, together with rent payments as required by this Lease. Landlord acknowledges that such monthly statements may be submitted up to THIRTY (30) days after the respective month's business is completed.

### 45.    Purpose:

Tenant may use the Demised Premises for the purposes of operation of a Burger King or other like fast food restaurant. If the Tenant however does not retain ownership of the Burger King franchise and no longer wants to use premises as a fast food restaurant, then the Tenant may use for other lawful purposes after obtaining written consent of Landlord, which shall not be unreasonably withheld or denied.    Use of the Demised Premises for any other purposes, including but not limited to residential purposes is STRICTLY PROHIBITED.

### 46.    Space and Area:

The Demised Premises consists of a portion of the building known as 273 Canal Street, New York, more particularly described in Exhibit "A", consisting of  approximately  2,500.00 usable square feet., containing approximately 24' 8" of frontage on Canal Street, and including the basement area immediately below the Demised Premises on the Street Level.

### 47.    Real Estate Taxes:

The Tenant agreed to pay as additional rent during the term of this lease fifty-five (55 %) percent of any increase of the annual real estate taxes (as such term is hereinafter defined) for the subject building from the base year of 2011/2012. Such additional rent shall be paid within ten (10) days after the giving by Landlord to Tenant of a statement and copy of the tax bill and shall be collectible as additional rent hereunder. Tax bills shall be conclusive evidence of the amount of such taxes and shall be used for the calculation of the amounts to be paid by the Tenant. The term "Real Estate Taxes" shall mean all real estate taxes, including but not limited to, school, village and town taxes, sign tax, assessments (special or otherwise), levies, and other governmental charges, of any kind or nature whatsoever, including but not limited to assessments for public improvements or benefits which are assessed, levied, confirmed or imposed upon the building of which the Demised Premises form a part and the land upon which it is erected or become payable during the term of this lease.

Initials _TP_

48.    **Water and Sewer:**

During the term of this lease and any subsequent periods of occupancy, the Tenant shall responsible for any and all water and sewer charges for the Demised Premises, which shall be billed directly to the Tenant by the water department of the City of New York (DEP) or other appropriate governmental body based on the reading of a separate water meter at the building. If such water and sewer charges however are billed instead to the Landlord, the Tenant agrees to pay as additional rent during the term of this lease one hundred (100%) percent of all water and sewer charges for Demised Premises.  Such additional rent shall be paid within ten (10) days after the giving by Landlord to Tenant of a statement and copy of the bill for these charges from the DEP or other appropriate governmental body and shall be collectible as additional rent hereunder.  DEP bills shall be conclusive evidence of the amount of such water and sewer charges and shall be used for the calculation of the amounts to be paid by the Tenant. If the Tenant fails to timely make said payment, the Tenant shall be deemed to have materially breached this lease.  The Tenant shall at his own cost and expense, maintain, repair and replace the separate water meter to read its consumption at the Demised Premises.  If, at any time, the water meter can not be read or is found to be functioning improperly, the Tenant shall be responsible to pay as additional rent seventy-five (75%) percent of the water and sewer charges billed to the entire building for that period that the meter is broken or improperly functioning.

49.    **Execution and commencement:**

Upon execution of the lease, the Tenant however shall tender first month's base rent and the security deposit set forth below.  This lease shall commence on August 1, 2011 or the date, the tenancy of Landlord's present tenant of the Demised Premises expires, is surrendered or is terminated, which ever occurs first.

50.    **Exculpatory Clause:**

In any action brought to enforce the obligations of the Landlord under this Lease, any judgment or decree shall be enforceable against the Landlord only to the extent of the Landlord's interest in the Building of which the Demised Premises form a part, and no such judgment shall be the basis of execution on, or be a lien on, assets of the Landlord or any assets of any party being a partner, member or stockholder in the Landlord, other than the interest in said Building.

51.    **Fines and violations:**

Tenant agrees to promptly pay all fines and summonses issued after the commencement date of the lease against the Demised Premises or the sidewalks adjacent thereto.  In the event Tenant fails to pay same, Landlord may pay on behalf of Tenant and the amount so paid shall be chargeable as additional rent and reimbursed to the Landlord with the following month's rent. Tenant shall be responsible, at its own expense for the removal of its rubbish and debris and the keeping of the sidewalks fronting the Demised Premises free and clear of ice, snow and debris.

Initials ____

## 52.    Fire Damage:

If the Demised Premises are so damaged by fire, other casualty or act of the public enemy so as to be substantially destroyed, then this Lease shall terminate and any unearned rent paid in advance by Tenant shall be apportioned and refunded to Tenant. However, if the Demised Premises are not substantially destroyed, the Tenant shall restore the Premises. The Tenant agrees to give the Landlord immediate notice of any damage to the Premises. Nothing herein, however, shall relieve Tenant from liability to the subject Premises caused by its own negligence.

## 53.    Noise, Music, Light and Odors:

A.    Tenant shall not allow any disturbing noise or music or light in the Demised Premises, which shall be reasonably objectionable to the Landlord or to the other Tenants of the Building of which the Demised Premises are a part. Tenant shall not maintain any loudspeakers or lighting devices or fixtures (e.g., spotlights, strobe lights), in or outside the Demised Premises, which may be heard or seen, as the case may be, from outside the Demised Premises nor permit any other sounds or light to emanate from, and be heard outside, the Demised Premises. Tenant agrees that throughout the term of this Lease it shall implement and adopt any means or measures reasonably requested by Landlord to eliminate noise or light emitted from the Demised Premises and deemed in Landlord's reasonable discretion to be offensive to the residents of the Building.

B.    Tenant agrees that at all times during the term of this Lease and any renewal thereof, it shall install all equipment and implement any measures believed by Landlord to be reasonably necessary to prevent the emission from the Demised Premises of odors or smoke which Landlord, in its reasonable discretion, deems objectionable or a nuisance to any of the Tenants of the Building. Tenant shall promptly comply with all requirements of any government entity or Tenant's insurance carrier with respect to limiting or fully abating the emission of any smoke, odors or any other effluence from the Demised Premises.

C.    Upon the written request of the Landlord, Tenant shall immediately cease and desist from any action, which shall cause a violation of the aforesaid provisions. Failure to comply with this provision of the Lease shall constitute a material breach of the terms of the same entitling the Landlord to all the remedies heretofore set forth with respect to breach of the covenants of the Lease.

## 54.    Additional rent:

All costs and expenses which Tenant assumes or agrees to pay pursuant to this lease shall at Landlord's election be treated as additional rent, and, in the event of nonpayment of said additional rent, Landlord shall have all the rights and remedies herein provided for in the case of nonpayment of rent or a breach of condition herein. If Tenant shall default in performing any term, covenant or condition of this lease which shall involve the expenditure of money by Tenant, Landlord may, but with no obligation, make such payment on behalf of Tenant, expend such sum as may be necessary to perform and fulfill such term, covenant or condition, and any sums so paid or expended by Landlord, with additional interest thereon at the rate of one and one half percent (1.5%) per month, but in no event to exceed the maximum legal rate of interest from

Initials _TT_

the date of such payment or expenditure, shall be and be deemed to be additional rent due Landlord and shall be repaid by Tenant to Landlord on demand, but no such waiver of Tenant's default nor shall it affect any other remedy of Landlord by reason of such default.

### 55.    Indemnification:

Tenant covenants and agrees, and shall cause all contractors, subcontractors and/or other agents to agree, to indemnify and save harmless Great Canal Realty Corp., and any mortgagee and any lessor under any ground or underlying lease, and their respective contractors, agents and employees, licensees and invitees, from and against any and all liability (statutory or otherwise), claims, suits, demands, judgments, costs, interest and expenses (including, but not limited to counsel fees and disbursements incurred in the defense of any action or processing), to which they may be subject or which they may suffer by reason of, or by reason of any claim for, any injury to, or death of, any person or persons (including, without limitation, landlord, its agents, contractors, employees, licensees and invitees) or damage to property ( including any loss of use thereof) or otherwise arising from or in connection with the occupancy or use of or from any work, installation or thing whatsoever done in, at or about the Demised Premises prior to, during, or subsequent to, the term of this lease or arising from any condition of the premises arising from tenant's negligence or resulting from any default by tenant in the performance of tenant's obligations under this lease or from any act, omission or negligence of tenant or any of tenant's officers, directors, agents, contractors, employees, subtenants, licensees or invitees.

### 56.    Insurance Requirements:

Tenant shall obtain, pay for and keep in force the following minimum insurance as set forth below with a company or companies satisfactory to Owner, carrying a minimum A.M. Best rating of A 10 or better, licensed to do business in the State of New York, and all such policies shall name Great Canal Realty Corp., as additional insured.

1)    Worker's Compensation as required by all applicable Federal, State, and/or other laws including Employers Liability in accordance with the statutory requirements of the State New York, together with Disability Benefits insurance required by the State of New York.

2)    Occurrence based comprehensive general liability, including the following coverages:
> A.    personal injury and bodily injury (including, without limitation, death and occupational sickness and disease);
> B.    contractual liability assumed by the contract;
> C.    explosion, collapse and underground work ("X, C, U") coverage to the extent relevant;
> D.    broad form property damage liability, and
> E.    products and completed operations coverage.

3)    Comprehensive automobile liability, covering all owned, hired and non-owned vehicles of Tenant, if any

Initials _TT_

The minimum limits for the insurance required by subparagraphs (2) and (3) shall be the greater of the usual limits carried by the Tenant or the following:

    a)    Premises/operations combined single limit of $2,000,000 for bodily injury and property damage per occurrence, and $4,000,000 general aggregate (full amount to be available for this location must be evidenced by a per location aggregate), and

    b)    Completed operations, $4,000,000 per occurrence, and a $4,000,000 general aggregate (full amount to be available for this location must be evidenced by a per location aggregate).

The required limits of liability may be obtained through the purchase of an umbrella liability policy(ies) over the underlying basic coverage. The terms/conditions of the umbrella liability policy must be following form of the underlying coverage.

The Tenant's comprehensive general liability coverage shall be broad enough to include all premises/operations, contractor's protective liability on the operations of all subcontractors and include endorsements for notice/knowledge of occurrence and unintentional E&O.

    4)    Tenant shall, at its own expense, maintain physical damage/hazard insurance in an amount adequate to cover the full replacement value of Tenant's business and personal property, equipment, and inventory owned or rented by Tenant and present upon the leased premises. Tenant waives, and shall require all subcontractors and other agents to waive, the right to recover against Owner, as well as any additional entities named as additional insureds (named above) for any damage or loss to property or equipment of any kind owned, rented or warehoused by Tenant, or for which Tenant is liable. Tenant shall provide (i) a waiver of the insurer's right of subrogation against the Landlord/Owner, and (ii) an express policy provision that indicates that such policy shall not be invalidated by the carrier if the assured waives the right of recovery against any party responsible for a casualty covered by the policy before the casualty.

    5)    Tenant shall maintain plate glass insurance in an amount and with company reasonably satisfactory to Landlord throughout the term of this Lease insuring the plate glass in the Demised Premises.

Prior to the use of the premises by Tenant, Tenant shall deliver to Owner, and maintain as current without interruption, certificates of insurance evidencing that the coverages required by subparagraphs (1), (2), (3), (4) and (5) are in full force and effect. Such certificates shall provide that the insurer shall give the owner thirty (30) days written notice of any change in or cancellation of such insurance for any reason, and shall show that Great Canal Realty Corp., is duly named as additional insured. Upon request by Owner or other additional named insured, Tenant shall provide for review certified copies of any of the insurance policies required.

In the event Tenant shall fail to obtain or maintain in effect any insurance required hereunder, Owner shall have the right (but by no means the responsibility), to obtain, at its option and at any time, the insurance required of the Tenant. Tenant agrees to pay all costs thereof and to furnish all necessary information and consents to permit the Owner to take out and maintain such insurance. The cost thereof plus a service charge of 15% of the annual premium,

Initials ___

shall be deemed additional rent, and shall be paid within ten (10 ) days after the rendition of a bill thereof, or in the alternative, the Landlord/Owner may exercise the option of voiding this lease. The types or limits of insurance required by this Article shall not limit or restrict the extent of Tenant's obligations under the Contract and nothing in the above requirements shall constitute a waiver of or limitation of any other rights or remedies the Owner may have for consequential damages or otherwise.

### 57.    Increase in insurance premiums:

If the rate for the Fire Insurance applicable to the Building in which the Demised Premises are located or any Building adjacent thereto or connected therewith shall be increased by reason of the Tenant's occupancy or manner of use of the Demised Premises, the Tenant hereby agrees to pay to the Landlord, on demand, as additional rent hereunder such additional sums of money which shall have been charged by the insurance company, and the Landlord shall have the same rights and remedies for the collection of same as if same were additional rent. All of the other provisions and covenants in Paragraph "6" of this Lease shall apply and be included in this Paragraph.

### 58.    Signage:

The Tenant shall not install a sign at the Demised Premises without obtaining the Landlord's prior written consent, which approval shall not be unreasonably withheld or delayed. In the event the Landlord grants its written consent, the Tenant shall be required to comply with all applicable rules and regulations for the installation of said sign. The Tenant covenants and agrees to provide the Landlord with a rendering of the sign at the time that it requests the Landlord's written consent. The Tenant, at the Tenant's own cost and expense shall keep such sign in good and working condition, shall procure any and all permits or licenses required for the maintenance thereof, shall comply with all governmental regulations applicable or pertaining to such sign, and shall pay any tax or other charges imposed by any governmental authority with regard to such sign. The insurance policies procured by the Tenant under Paragraph 57 shall provide the Landlord with coverage against liability arising from use or maintenance of said sign. The Tenant shall be responsible for paying all fees if an illuminated sign is erected. Although, all signs as presently situated at the Demised Premises as of execution of Lease may remain as well as the standard Burger King Signage, subject to compliance with all governmental regulations applicable or pertaining to such sign, and Tenant shall pay any tax or other charges imposed by any governmental authority with regard to such signs.

### 59.    "AS IS" Condition:

The Tenant has inspected the Demised Premises and is thoroughly acquainted with the condition thereof and the Tenant acknowledges it is familiar with the Demised Premises and the Tenant agrees to accept the Demised Premises in its "as is" condition on the Commencement Date of this Lease, it being expressly understood and agreed that the Landlord shall not be required to perform any demolition, construction, improvement, alteration or work at the Demised Premises, except as otherwise stated herein. The Tenant acknowledges that the Landlord has made no representations as to the condition of the Building, the Demised Premises

Initials ___

or of any equipment or facilities located within or appurtenant thereto or as to its fitness or sufficiency for the Tenant's requirements or as to any defects, latent, patent or otherwise. The Tenant further acknowledges that Landlord has made no representations as to whether the use for which the Demised Premises are being leased hereunder is compatible with the Certificate of Occupancy for the Building.

**60.    <u>Tenant Renovations:</u>**

a)    That in the event the Tenant performs any construction or alterations at the Demised Premises, the Landlord shall not be responsible for any structural defect, latent or otherwise in the Demised Premises, or change of conditions elsewhere in the Building or in the Demised Premises resulting from the Tenant's construction or alteration, or for any damages to same or to goods or thing contained or placed thereon or in the vicinity thereof.

b)    The Tenant has been advised that the Landlord makes no representation as to the load bearing capacity of the structure;

c)    The Tenant has been advised that the Demised Premises is located within a landmark building and any changes and alterations to the Demised Premises may need the approval of the landmark commission and other appropriate governmental agencies.

d)    Prior to the Tenant commencing any work respecting any alteration or improvement at the Demised Premises, the Tenant shall satisfy each and every condition set forth below:

i.    The Tenant shall, at its sole cost and expense, supply the Landlord with professionally prepared plans and specifications, including storefront rendering. The Landlord hereby reserves the right to require certain revisions of such plans and specifications respecting the design reflected therein, but further agrees not to unreasonably delay or withhold its consent for the Tenant to be able to proceed with the anticipated work reflected on said plans and specifications;

ii.    Subsequent to the delivery and approval by the Landlord of the Tenant's plans and specifications, the Tenant shall employ its own contractor in connection with the construction to be performed at the Demised Premises in accordance with those approved plans and specifications. The Tenant agrees that all work to be performed shall be done in accordance with good and sound building standards and shall be further performed in a professional workmanlike manner. All of the Tenant's work shall be done in accordance with all governmental regulations, with the Tenant being responsible at its own cost and expense for obtaining permits and approvals, including asbestos inspection and removal, if necessary, as well as final sign-offs and compliance with the other provisions of this Lease. Furthermore, the Tenant agrees that all work to be performed by any of the trades employed shall in no way affect work being performed at the Building by the Landlord and the unions, which the Landlord's contractors' employees may be members of;

iii.    The Tenant shall provide $3,000,000.00 in general liability insurance coverage to the Landlord which shall protect the Landlord's interest during the course of construction and, in addition thereto, the Tenant shall provide the Landlord with a Certificate of insurance reflecting such coverage, and the naming of the Landlord as additional insured and the Tenant shall obtain

Initials _____

a performance Bond in an amount approximating the contract price of the construction (although, a performance Bond shall not be required for contracted jobs estimated to cost $75,000.00 or less in the aggregate);

     iv.    Subject to the provisions of this Paragraph, any and all movable machinery, equipment and fixtures installed by the Tenant (sometimes herein referred to as "Tenant's Property") shall remain personally notwithstanding the fact that it may be affixed or attached to the realty, and shall, during the term of this Lease or any extension or renewal thereof, belong to and be removable by the Tenant, provided that (i) the Tenant shall remove said installations prior to the expiration of such term or the sooner termination thereof; and (ii) the Tenant shall repair any damage caused by said removal and shall deliver the Demised Premises to the Landlord in the same condition as upon the commencement of the term hereof, reasonable wear and tear excepted. Prior to the expiration of the term or sooner termination thereof the Tenant shall, at its own cost and expense, remove from the Demised Premises all of the Tenant's Property, except such items thereof as the Tenant shall have expressly agreed in writing with the Landlord are to remain and to become the property of the Landlord, and the Tenant shall repair any damage to the Demised Premises resulting from such removal; and

     v.    The Tenant shall ascertain from the Landlord within thirty (30) days prior to the end of the term hereof or any extension or renewal thereof whether the Landlord desires to have any non-movable fixtures, machinery and/or equipment permanently installed by the Tenant, removed from the Demised Premises and, if the Landlord shall so desire, the Tenant shall, prior to the end of the term hereof, remove such indicated items and restore the Demised Premises with respect thereto, to the same condition as upon the commencement of the term hereof, reasonable wear and tear excepted.  All fixtures, machinery and equipment installed by the Tenant, except those items which the Landlord expressly agrees are to remain in the Demised Premises and become the property of tile Landlord,  remaining within the Demised Premises after the expiration of such term or sooner termination thereof and after the Tenant is no longer in possession of the Demised Premises shall, at the Landlord's option, either (i) become the property of the Landlord, free of any claim by the Tenant or any person claiming through the Tenant, or (ii) be removed and disposed of by the Landlord, at the Tenant's cost and expense, without further notice to or demand upon the Tenant. Machinery, fixtures, chattels, or equipment, if any, furnished or installed by the Tenant, the cost of which is to be borne by the Landlord, shall become the property of the Landlord upon payment thereof by the Landlord or reimbursement of the Tenant by the Landlord, as the case may be, and shall not be removed by the Tenant. The Tenant's obligations under this Article shall survive the expiration or sooner termination of the term hereof. Anything herein contained to the contrary notwithstanding, it is understood and agreed that all structural improvements made by the Tenant in the Demised Premises shall be surrendered to the Landlord at the expiration of the term.  In the event the Tenant shall violate any of the above provisions, same shall be considered a material breach under this Lease and the Landlord shall be entitled to immediately avail itself of all legal remedies that it is entitled to with respect to such breach.

     **61.**    Any notice, request, approval or consent required to be given under this lease shall be in writing, personally served or sent by certified mail, addressed to the addresses set

Initials 

forth hereinabove. Either party may change such address, by notice, given in the manner as herein provided.

62.     Within ten (10) days after request thereof by Landlord, Tenant agrees to deliver in recordable form certification to any proposed mortgagee, or purchaser, certifying that this lease is in full force and effect and that there are no defenses or offsets thereto, or stating those claimed by Tenant.

63.     Tenant covenants that Tenant will not use or suffer or permit any person to use the Demised Premises for any unlawful purpose and to obtain and maintain, at Tenant's sole cost and expense, all licenses and permits from any and all governmental authorities having jurisdiction of the Demised Premises which may be required for the conduct of Tenant's business therein. Tenant will indemnify and save Landlord harmless from and against any claims, penalties, loss, damage or expense imposed by reason of violation of or failure to comply with any applicable law, rules or regulations of any governmental authorities having jurisdiction thereof related to Tenant's use and occupancy of the Demised Premises.

64.     <u>Compliance:</u>

Tenants agrees that no provision in this lease, including but not limited to, the provisions of Article 2 hereof shall be deemed in any way as a representation by Landlord as to fitness or legality of the Demised Premises for the use herein Demised. Tenant agrees that it is relying on its own independent inspection and examination of the Demised Premises and its own independent review of all governmental ordinances, rules and regulations with respect thereto and agrees to promptly, at its sole cost, to have the Certificate of Occupancy amended so as to comply with all governmental rules, ordinances and regulations.

65.     <u>Utilities:</u>

Notwithstanding any provision herein contained to the contrary, the Demised Premises is to be heated and cooled at the sole cost and expense of the Tenant, and Tenant shall pay all utility expenses for the Demised Premises, including but not limited to, water and sewer charges, hot and cold water, heat and steam, gas, electric, and water consumed on the subject Premises. Charges for all services provided by public service companies shall be billed directly to Tenant and shall be timely paid by Tenant. Tenant acknowledges that no utilities, heat or other services, have been included in rents and that, without limitation, Landlord has no obligation to furnish or supply electricity, gas, water, heat, air-conditioning or other utility or service to or for the Demised Premises. The Tenant shall install and maintain all meters at the Demised Premises for the purpose of measuring the Tenant's consumption of the respective utilities (electricity and water and sewer consumption) at the Tenant's sole cost and expense, and those meters already present, the Tenant shall maintain in good order and condition. Any water and sewer charges resulting from Tenant's consumption at the Premises that is billed to the Landlord shall be paid by the Tenant and deemed additional rent for the purposes of this lease. All service and maintenance to hot water tank and air conditioner in the Demised Premises and the sewer system affecting the Demised Premises shall solely be the responsibility of the Tenant. Interruption or curtailment of such services shall not constitute a constructive or partial eviction nor entitle the

Initials _TP_

Tenant to any compensation or abatement of rent. The Tenant covenants and agrees that at all times its use of electric current shall never exceed the capacity of the existing feeders to the Building or of the risers or wiring installation. The Tenant shall make no alteration or addition to the electrical equipment without the prior written consent of the Landlord, which shall not unreasonably withheld or delayed.

### 66.    Sprinkler System:

If any Legal Requirement shall require or recommend the installation of fire extinguishers, a "sprinkler system," fire detection and prevention equipment (including, but not limited to, smoke detectors and heat sensors), or any changes, modifications, alterations, or the installation of additional sprinkler heads or other equipment for any existing sprinkler, fire extinguishing system, and/or fire detection system, then Tenant shall, at Tenant's sole cost and expense, promptly make such installations within the Demised Premises and make such changes, modifications, alterations, or the installation of additional sprinkler heads or other required or recommended equipment. Tenant shall be responsible, at its sole cost and expense, for making all repairs to any sprinkler system servicing the Demised Premises.

"Legal Requirements" shall mean (i) laws, statutes and ordinances (including Building codes and zoning regulations and ordinances) and the orders, rules, regulations, directives and requirements of all federal, state, county, city and borough departments, bureaus, board, agencies, offices, commissions and other subdivisions thereof, or of any official thereof, or of any other governmental public or quasi-public authority, whether now or hereafter in force, which may be applicable to the Demised Premises or any part thereof, or the sidewalks, curbs, Building and (ii) all requirements, obligations, recommendations and conditions imposed or suggested by the carrier of Landlord's or Tenant's insurance policy for the Demised Premises or Building in which the Demised Premises are located.

67.    In the event the Tenant claims or asserts that the Landlord has violated or failed to perform a covenant of lease, Tenant's sole remedy shall be an action for specific performance, declamatory judgment or injunction.   In no event shall Tenant be entitled to any money judgments for a breach of such covenant and in no event shall Tenant claim or assert any claims for money damages in any action or proceeding, or by way of set off, defense or counterclaim and Tenant hereby specifically waives the right to any money damages or other remedies.

### 68.    Late Payment:

In the event the payments for rent or additional rent is not received within ten (10) days of its due date, then, a late charge of four (4%) percent of the rent due shall be assessed against the Tenant and be due to Landlord as additional rent. If any check payment is returned unpaid, Tenant shall pay an unpaid check fee of $50.00, or the actual bank charges, which ever is greater, plus interest on the payment from the original date it was due. In addition, where due to Tenant's default in the payment of any rent due hereunder, Landlord has incurred costs and expenses, including attorney's fees, in a successful action to collect such rent, such costs and expenses shall be paid by Tenant to Landlord.

Initials ___

### 69.    No abatement:

Except as otherwise provided in this lease, no abatement, diminution or reduction of the Annual Minimum rent, Additional Rent or other charges payable by Tenant under this lease shall be claimed by or allowed to Tenant for any inconvenience, interruption, cessation or loss of business or otherwise, caused, directly or indirectly, by any present or future laws, rules, requirements, orders, directions, ordinances or regulations of the United States of America or of the State, County or City governments or of any municipal, governmental or lawful authority whatsoever, or by priorities, rationing or curtailment of labor or materials, or by war or any matter or thing resulting there from, or by any causes beyond the control of Landlord.

70.    Notwithstanding any provision in this Lease permitting Tenant to cure any default within a specified period of time, if Tenant shall default: 1) in the timely payment of Fixed Rent or Additional Rent and such default shall continue or be repeated for two (2) consecutive months or for a total of three (3) months in any period of twelve (12) months, or 2) in the performance of any material term, condition or covenant of this Lease more than three (3) times in any period of twelve (12) months , then, in either of such events and notwithstanding that such defaults shall have been cured within the grace period and/or after notice, if any, as provided in this Lease, any further similar default shall be deemed to be deliberate and Landlord thereafter may serve upon Tenant a written ten (10) day notice of termination of this Lease without affording Tenant an opportunity to cure such further default.

### 71.    Repairs:

A.    Tenant shall, at its own expense, keep and maintain the Demised Premises in a clean, sightly, sanitary order and in good condition and repair. Tenant shall not cause or permit any waste or nuisance in or about the Demised Premises. Tenant shall make all repairs to the Demised Premises, which are necessary or desirable to keep the Demised Premises in good order and repair and in a safe, dry and tenable condition. Without limiting this generality of the foregoing, Tenant is specifically required to make repairs (1) to the portion of any pipes, ducts, wires or conduits contained within the Demised Premises; (2) to windows, plate glass, doors, and any fixtures or appurtenances composed of glass; (3) to Tenant's sign; (4) to any heating equipment and air conditioning units within or installed in the Demised Premises; (5) any water damage to Landlord's property; (6) sewer lines and sewer trap; and (7) to the Demised Premises when repairs to the same are necessitated by any act or obligations under this lease. Tenant shall keep the Demised Premises in a clean and sanitary condition and free from offensive odors. Tenant shall keep the sidewalk free from cracks, offensive odors, garbage and snow and ice. Any sewer lines clogged or obstructed due to the Tenant's operation, whether in the Demised Premises or in the public areas of the building shall be repaired by the Tenant. The Tenant is not responsible for damages caused to other parts of the building, unless caused by the conduct or actions of the Tenant, its employees, agents, patrons, licensees, servants, contractors and/or visitors.

B.    Emergency repairs. If in an emergency, it shall become necessary to make promptly any repairs or replacements, which under the provisions of this paragraph are Tenant's responsibility, Landlord may reenter the Demised Premises and proceed forthwith to have the

Initials __TY__

repairs or replacements made and pay the cost thereof but Tenant shall be informed if at all possible prior to the expense being incurred. Any expense incurred by Landlord in making the repairs shall be deemed additional rent payable by Tenant within thirty (30) days following the rendition of a statement or a bill thereof.

## 72.    Vermin:

Tenant, at its own expense, shall keep the Demised Premises free from vermin, rodents or anything of like objectionable nature, and shall employ only such vermin exterminating contractors as are approved by Landlord.  The Tenant must exterminate at minimum the Demised Premises twice a month. In event of Tenant's failure to keep the Demised Premises free from vermin, Landlord shall have the right, at Tenant's expense, to take all necessary or proper measures to eradicate any and all vermin from the Demised Premises.  Any expense incurred by Landlord in taking such measures as are provided for herein shall be deemed additional rent payable by Tenant within five (5) days next following the rendition of a statement or a bill thereof.

## 73.    Waiver of claims:

Tenant hereby waives any and all claims against Landlord or Landlord's agents or employees for any loss of, or damage to personal property, or any injury sustained in or about the Demised Premises arising from any injury sustained in or about the Demised Premises arising from any failure of Landlord to keep the Demised Premises in repair unless such damage shall be the result of Landlord's negligence.  Tenant waives any and all claims against Landlord for any damage or injury arising from any act, omission or negligence of co-Tenants, other occupants of the same building, or of adjoining or contiguous buildings, and owners of adjacent or contiguous property.

## 74.    Landlord's liability waiver:

The officers, Board of Directors, employees or agents of the Landlord, or any successors interest, (which term is used herein includes aggregates of individual, such as joint ventures, general or limited partnerships or associations), shall be under no personal liability with respect to any of the provisions of this lease, and if such individual hereto is in breach or default with respect to its obligations under this lease, Tenant shall look solely to the equity of such individual in the land and building of which the Premises forms part for the satisfaction of Tenant's remedies and in no event shall Tenant attempt to secure any personal judgment against any officer, Board member, partner, employee or agent of Landlord by reason of such default by Landlord.

## 75.    Hold Over:

Should Tenant hold over in possession after the expiration or sooner other termination of this lease, such holding over shall not be deemed to extend the term or renew this lease, but such holding over thereafter shall continue upon the covenants and conditions herein set forth, except

Initials _____

that the charge for use and occupancy of such holding over for each calendar month or part thereof (even if such part shall be a small fraction of a calendar month) shall be the sum of:

A.      1/12 of the highest Annual Minimum Rent set forth in paragraph 40 of this lease times 2.0, plus

B.      those other items of additional rent which would have been payable monthly pursuant to this lease had this lease not expired, which total sum Tenant agrees to pay Landlord promptly upon demand, in full, without set-off. Tenant acknowledges the extreme importance to Landlord that possession of the Demised Premises be surrender at the expiration or sooner termination of this lease. Tenant agrees to indemnify and save Landlord harmless against any and all costs, claims, losses or liabilities directly or indirectly resulting from delay by Tenant in so surrendering the Demised Premises, including without limitation, any claims made by any succeeding Tenant founded on such delay; loss of profits suffered by Landlord and expenses incurred by Landlord due to the cancellation or modification of a new lease for the succeeding term; and any other extra expenses of relating the Demised Premises. The rights and obligations set forth in this paragraph shall survive after the termination or expiration of this lease.

### 76.    Estoppel Certificate:

Tenant at any time, and from time to time, upon at least ten (10) days' prior notice by Landlord, shall execute, acknowledge and deliver to Landlord, and/or to any other person or entity specified by Landlord, a statement certifying as to any matters requested by Landlord.

### 77.    Licenses, Permits, Orders:

Tenant shall secure and maintain, at its own cost and expense, such licenses, permits or orders of any federal, State or municipal government or any agency thereof as shall be necessary for the lawful conduct of Tenant's business in the Demised Premises, and Tenant shall comply with all rules and regulations of any governmental body relating thereto. Tenant's obligation under this lease shall not be abridged, impaired or lessened by reason of Tenant's inability to obtain or maintain such licenses, permits, or orders.

### 78.    Attornment:

If at any time or times during the term of this lease, the Landlord shall be holder of a leasehold estate covering the Premises of which the Demised Premises are a part, and if such leasehold estate shall end or terminate for any reason, Tenant shall attorn, at the election and demand of any owner of the Demised Premises of which the Demised Premises are a part, or of any mortgagee, upon the terms and conditions set forth herein for the remainder of the term of this lease. The foregoing provision shall inure to the benefit of any such owner or mortgage and in the event of any such election and demand, be self-operative eliminating the necessity of the execution of any further instruments; provided, however, that Tenant agrees upon the demand of any such owner or mortgagee to execute, acknowledge and deliver any instrument or instruments concerning such attornment. The foregoing provisions shall not be construed to limit or preclude any other rights which such owner or mortgagee may then have under law or otherwise.

Initials ___TP___

## 79.   <u>Assignment and Subletting:</u>

A.      Except as otherwise provided herein, Tenant may not assign this Lease or sublet the entire Demised Premises or any portion of the Demised Premises without Landlord's prior written consent, which shall not be unreasonably denied, withheld or delayed.   The Tenant however may not sublease or assign the Demised Premises to an intimate apparel retailer. Any consent Landlord may grant shall be on such terms and conditions as Landlord may reasonably require, including, but not limited to, ongoing payment by Tenant to Landlord of a 50% share of any increased rent resulting from a sublease, payment by Tenant to Landlord of a 50% share of any financial consideration received for an assignment; provided, however, that Tenant shall be permitted to deduct from any such required payment the following "Tenant's Transfer Costs". As used herein, "Tenant's Transfer Costs" shall mean (a) all legal expenses incurred by Tenant in connection with any subletting or assignment and (b) all brokerage commissions and advertising costs incurred by Tenant in connection with any subletting or assignment.   Tenant shall be responsible for payment of any and all reasonable, out-of-pocket costs and expenses including, but not limited to, reasonable legal fees, incurred by Landlord in connection with any such assignment or sublet.

B.      Tenant, for itself, its heirs, distributees, executors, administrators, legal representatives, successors and assigns, expressly covenants that it shall not assign, mortgage or encumber this Lease, nor underlet, nor suffer, nor permit the Demised Premises, or any part thereof, to be used or occupied by others.

C.      Tenant covenants that notwithstanding the acceptance of rent by Landlord from an assignee or sublessee or other party, in the event of any assignment or transfer in violation of the provisions of this Lease, Tenant shall remain fully and primarily liable for the payment of Fixed Rent and additional rent due and to become due under this Lease and for the performance of all of the covenants, agreements, terms, provisions and conditions of this Lease on the part of Tenant to be performed or observed.

D.      No assignment of this Lease or sublease of the Demised Premises shall relieve Tenant of its obligations under this Lease. Tenant shall remain fully and primarily liable for the payment of all rent and additional rent due and to become due under this Lease and the performance of all of the covenants, agreements, terms, provisions and conditions of this Lease on the part of Tenant to be performed and observed, whether rent is accepted by the Landlord from an assignee or sublessee or any other party.

E.      Notwithstanding anything herein to the contrary, it is understood that Tenant may assign and/or sublet this Lease to an approved Burger King franchisee and/or Burger King Corporation as a part of the sale of its business and the Guarantor shall be released from liability provided 1) the Tenant obtains the Landlord's written consent which will not be unreasonably denied, withheld or delayed; 2) the principal of the assignee executes a personal guaranty; and 3) the proposed Assignee and new guarantor each provides their financial statement of net worth and a positive credit report, which must establish the financial wherewithal to operate the

Initials _____

business and cover all expenses, including the rent and additional rent provided herein, for at least one (1) year without a positive cash flow.

### 80.    Modifications:

If, in connection with obtaining financing or refinancing for the building of which the Demised Premises for a part, a banking, insurance or other institutional lender shall request reasonable modifications to this lease as a condition to such financing or refinancing, Tenant will not unreasonable withhold, delay or defer its consent thereto, provided that such modifications do not increase the obligations of Tenant hereunder (except, notices of any defaults by Landlord to such lender and/or permit the curing of such defaults by such lender and/or permit granting of such additional time for such curing as may be required for such lender to obtain possession of the said building) or materially adversely affect the leasehold interest of any such lender be given for any modification of this lease or any assignment or sublease, be deemed to materially adversely affect the leasehold interest hereby created.

### 81.    Failure to Perform:

Except as otherwise expressly provided herein, Landlord shall have the right, but not the obligation, to perform any covenant of Tenant which Tenant fails to timely perform as provide in this lease on ten (10) days' notice to Tenant or without notice in the event of an emergency.

### 82.    Subordination:

This lease is subject and subordinate to all ground or underlying leases and to all mortgages (inclusive of the liens of all construction and permanent financing) which may now or hereafter affect such leases or the real property of which the Demised Premises are a part and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages.    This clause shall be self-operative and no further instrument of subordination shall be required by any ground or underlying lease or by any mortgagee, affecting any lease or the real property of which the Demised Premises are a part.  In confirmation of such subordination, Tenant shall execute promptly any certificate that Landlord may request.

83.    Tenant shall pay, as additional rent, all reasonable attorney's fees and disbursements (and all other court costs or expenses of legal proceedings) which Landlord may incur or pay out by reason of, or in connection with (a) any action or proceeding arising out of this Lease by Landlord to terminate this lease; (b) any default by Tenant in the observance or performance of any obligation under this lease (including, but not limited to, matters involving: payment of rent and additional rent; computation or escalation; alterations of other Tenant's work; and subletting or assignment) whether or not Landlord commences any action or proceeding against Tenant; (c) any assignment, sublease, or leasehold mortgage proposed or granted by Tenant, and all negotiations with respect thereto.  Tenant's obligations shall survive the expiration of the lease term.

Initials _____

### 84.    Guaranty:

For value received, and in consideration for, and as an inducement to Landlord making the instant lease agreement, with the Tenant for the subject premises, the undersigned guarantees to Landlord, landlord's successors and assigns, the full performance and observance of all the covenants, conditions and agreements, therein provided to be performed and observed by Tenant, including the "Rules and Regulations" as provided therein, without requiring any notice of non-payment, nonperformance, or non-observance, or proof, or notice or demand, whereby to charge the undersigned therefore, all of which the undersigned hereby expressly waives; and undersigned expressly agrees that the validity of this guaranty and the obligations of the guarantor hereunder shall in no way be terminated, affected or impaired by reason of the assertion or non-assertion by Landlord against tenant of any of the rights or remedies reserved to Landlord pursuant to the provisions of the within lease. The undersigned further covenants and agrees that this guaranty shall remain and continue in full force and effect as to any renewal, modification or extension of this lease and during any period when Tenant is occupying the premises as a "statutory tenant". As a further inducement to Landlord to make this lease and in consideration thereof, Landlord and the undersigned covenant and agree in any action or proceeding brought by either Landlord or the undersigned against the other or any matters whatsoever arising out of, under or by virtue of the terms of this lease or of this guaranty that Landlord and the undersigned shall and do hereby **waive trial by jury.** This guaranty does not modify the terms of the lease and nothing herein contained shall relieve tenant from any liability thereunder in accordance with the terms of the lease.

### 85.    Sanitation:    Tenant must arrange for private sanitation and garbage removal from Demised Premises.

### 86.    Delivery of lease:    This lease is not an offer and shall not be binding upon the Landlord unless and until it is signed by Landlord and returned to Tenant.

### 87.    The Tenant shall permit the Landlord to show the Demised Premises to prospective Tenants during the last six months of this lease, or any extension thereof.

### 88.    If there are any contractions between the terms of the printed lease and this Rider, the terms of this Rider shall prevail.

### 89.    Definitions and Captions:

The captions, numbers and definitions herein are inserted only as a matter of convenience and are not intended to define, limit, construe or described the scope or intent of any Paragraph, nor in any way affect this Lease. In conjunction herewith, the defined term "Landlord" as used in this Rider shall be deemed to be one and the same as the defined term "Owner" as used in the printed portion of this Lease.

Initials ___

**90.**    **Entire Agreement:**

All prior negotiations and all representations have been merged in this document, which constitutes the entire agreement (lease and attached rider) between the parties hereto, and this agreement shall not be modified, canceled or discharged in whole or in part, except by an instrument in writing subscribed by the party to be charged with such modification, cancellation or discharge.

IN WITNESS WHEREOF, Landlord and Tenant have respectively signed and sealed this lease as of the day and year first above written.

_____          _____
Witness                                         Great Canal Realty Corp., Landlord
                                                       By:

_____          _____
Witness                                         Creative Bgrs Inc., Tenant
                                                       By: Thueng Pham, Pres

_____          _____
Witness                                         Personal Guarantor

Initials _____

# EXHIBIT "C"

**CIVIL COURT OF THE CITY OF NEW YORK**
**COUNTY OF NEW YORK    PART ___**
**DECISION AND JUDGMENT**

INDEX # 055976/2015
JUDGMENT SEQ # 002

GREAT CANAL REALTY CORP,

Petitioner(s)

**AGAINST**
CREATIVE BGRS.INC,
XYZ CORP,
DOE, JOHN
DOE, JANE

Respondent(s)

**Decision and judgment is** rendered based upon
respondents failure to file an answer as follows:
Judgment of possession is granted in favor of:
GREAT CANAL REALTY CORP,
and against
CREATIVE BGRS.INC,
XYZ CORP,
A counterclaim is granted in favor of the respondent in the amount of    $0.00
(which if not being entered separately is offset and reflected in the
total amount due, listed below.)

A money judgment is hereby granted, along with cost and disbursements
in the amount of    $0.00 in favor of:
GREAT CANAL REALTY CORP,
and against
CREATIVE BGRS.INC,
XYZ CORP,

for a total amount of    $0.00

(Monthly use and occupancy is set at    $0.00 per month, as per order,
stipulation or decision in record.)

_____

_____

Warrant to issue forthwith          Execution _forthwith_

Date _April 9, 2015_          _Hon. Tanya R. Kennedy_
                              Judge, Civil/Housing Court
                              HON. TANYA R. KENNEDY
                              ACTING SUPREME COURT JUSTICE

Section 5020(c) of the Civil Practice Law and Rules requires that a satisfaction be filed with the
clerk when the judgment is satisfied.  Failure to do so subjects the judgment creditor to penalties.

=================================================================
CIV-LT-50(2006)                                        Page 1 of.2

~~~~~ # ~7/2

# CIVIL COURT OF THE CITY OF NEW YORK
## COUNTY OF NEW YORK

Warrant Index Number
055976/2015/002
FJ SEQ 002

## WARRANT OF EVICTION

**TO THE SHERIFF OF THE CITY OF NEW YORK OR ANY MARSHAL, GREETINGS:**
After a decision and the entry of a judgement of possession in favor of the petitioner(s)

GREAT CANAL REALTY CORP,

**IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK, you are commanded TO REMOVE THE RESPONDENT(S):**

CREATIVE BGRS.INC,
XYZ CORP,

**AND ALL OTHER PERSONS from the premises**

273 CANAL STREET GRNDLE NEW YORK, NY 10013
CONSISTING OF ALLROOMS IN THE GROUND LEVEL AND BASEMENT COMMERCIAL SPACE
and to put the petitioner(s) in full possession.
This warrant may be executed Forthwith.

WITNESS, HON. TANYA KENNEDY
        Judge, Civil/Housing Court

Date 04/20/2015          Chief Clerk Carol Alt _____ *Carol Alt*
                                                        CHIEF CLERK

**RETURN:** Pursuant to the command of this warrant I have this day put the petitioner(s) above named into full possession of the premises by
        Legal Possession_____          Eviction_____

                        Signature
                                    HAMMER, ROGER E. {BADGE 12}
                                    211-12 NORTHERN BLVD. 2FL
Docket Number: 29912                BAYSIDE, QUEENS, NY 11361
APS Control Number:                 (718) 279-4118

(To be signed in case of Legal Possession)
Possession of the premises with the contents intact is hereby acknowledged.
The petitioner accepts responsibility for all property on the premises,
releases the marshal from any liability, and agrees to hold the marshal
harmless from any action resulting from the execution of this warrant.

                        Petitioner, Agent, Attorney for Landlord

S4R

302015055976002

# EXHIBIT "D"

CIVIL COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK NON HOUSING PART 52
----------------------------------------X
GREAT CANAL REALTY CORP.

                              Petitioner/Landlord,

     — against —

CREATIVE BGRS. INC.
273 Canal Street,
Ground Level and Basement commercial space
New York, New York 10013

                              Respondent/Tenant,

     — and —

"XYZ CORP.", "JOHN DOE" and/or "JANE DOE"

                              Respondent/Undertenant.
----------------------------------------X

Index No. L&T
55976/2015

STIPULATION OF
SETTLEMENT

     This Stipulation of Settlement is made and entered into by and between the Petitioner Great Canal Realty Corp. ("Petitioner") and the Respondent Creative BGRS. Inc. ("Respondent"), who are sometimes referred to individually herein as a "Party" and collectively as the "Parties."

     WHEREAS, on or about February 18, 2015, Petitioner served Respondent a commercial three (3) day rent demand notice, in which the Petitioner claimed that $100,231.91 was due as rent through February, 2015;

     WHEREAS, Respondent failed to pay the rent sought in the rent demand notice;

     WHEREAS, on or about February 23, 2015, Petitioner commenced the instant nonpayment proceeding by service of the

1

Notice of Petition and Petition, receipt of which is hereby acknowledged by Respondent;

WHEREAS, the Respondent failed to answer the Petition. As a result, the Court has granted the Petitioner a judgment of possession and warrant of eviction against the Respondent.

WHEREAS, the Marshall has served the Notice of Eviction on Respondent and the eviction in this matter is scheduled for May 11, 2015;

WHEREAS, the Respondent has request that the Petitioner stay execution of the warrant to allow the Respondent to find an acceptable party to acquire his burger king franchise located at the subject premises;

WHEREAS, the Petitioner agreed to stay execution of the warrant under the following terms and conditions:

1. The Respondent appears by its attorney Stephen S Danetz, 118-21 Queens Boulevard, Forest Hills, NY, 11375 and consents to the jurisdiction of the Court.

2. The Respondent agrees that $182,891.91 is due and owing as rent and additional rent to Petitioner through the date of this stipulation, which includes May, 2015 base rent. This sum does not account for Petitioner's attorney's fees.

3. The Petitioner agrees to stay execution of the warrant to July 31, 2015 provided the Respondent pays the Petitioner $20,000.00 upon execution of this agreement; $20,000.00 by June 1,

2015 and $20,000.00 by July 1, 2015. These payments shall be in the form of certified funds or official bank check, received on the date stated and shall be applied first to the current rent and then the rent arrears stated above.

4.   On or before August 1, 2015, the Respondent agrees to pay to Petitioner all outstanding rental arrears and Petitioner's reasonable attorney's fees.   Upon receipt of this payment, the proceeding shall be discontinued.

5.   Upon default of any of the aforementioned payments, the stay of eviction is immediately lifted and the warrant of eviction may be executed on service of the Marshall's notice.

5.   Each of the Parties hereto acknowledges that, except as herein expressly set forth, no representation of any kind or character has been made by any such Party's officers, agents, representatives, or attorneys to induce any other Party to execute this Stipulation of Settlement.

6.   This Stipulation of Settlement shall be binding upon and inure to the benefit of the Parties hereto and to their respective heirs, successors and assigns.

7.   This Stipulation of Settlement constitutes the entire agreement between the Parties concerning the matters contemplated therein.   This Stipulation of Settlement may not be modified or amended, nor any of its terms waived, except by a writing signed by all Parties hereto.

3

8.   The language of all parts of this Stipulation of Settlement shall be in all cases construed as a whole, according to its fair meaning, and not construed for or against any of the Parties hereto, including the drafter of this Stipulation of Settlement.

9.   This Stipulation of Settlement may be executed in counterparts by means of electronic transmittal or facsimile, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.  Any party may submit this stipulation to the court ex parte to be "So Ordered".

DATED:   New York, New York
         April 29, 2015

_____
STEVEN T. GEE, P.C.
Attorney for Petitioner
121 Chrystie Street
New York, New York 10002
(212) 334-8838
By Steven T. Gee, Esq.

_____
LAW OFFICE OF STEPHEN S. DANETZ
Attorney for Respondent
118-21 Queens Boulevard,
Forest Hills, NY, 11375.
(718) 575-0045
By Stephen S. Danetz, Esq.


SO ORDERED: _____


4

# EXHIBIT "E"

CIVIL COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK NON HOUSING PART 52
--------------------------------------------X

GREAT CANAL REALTY CORP.

                            Petitioner/Landlord,

    - against -

CREATIVE BGRS. INC.
273 Canal Street,
Ground Level and Basement commercial space
New York, New York 10013

                            Respondent/Tenant,

    - and -

"XYZ CORP.", "JOHN DOE" and/or "JANE DOE"

                            Respondents/Undertenants.
--------------------------------------------X

Index No. L&T
55976/2015

STIPULATION   OF
SETTLEMENT

    This Stipulation of Settlement is made and entered into by
and between the Petitioner Great Canal Realty Corp.
("Petitioner") and the Respondent Creative Bgrs. Inc.
("Respondent"), who are sometimes referred to individually
herein as "Party" and collectively as the "Parties".

    WHEREAS, on or about February 23, 2015, the Petitioner
commenced the instant nonpayment proceeding by service of the
Notice of Petition and Petition for the nonpayment of rent on
the Respondent;

    WHEREAS, the Respondent failed to appear or answer the
Petition;

    WHEREAS, on or about April 9, 2015, as a result of the
Respondent's default, a judgment of possession and warrant of

eviction was issued in favor of the Petitioner against the Respondent;

WHEREAS, on April 29, 2015, the Parties entered into a Stipulation of Settlement ("Stipulation"), in which execution of the warrant was stayed for the Respondent to pay the $182,891.91 in rent and additional rent due pursuant to a payment schedule set forth in said stipulation, which was filed with the Court on May 1, 2015;

WHEREAS, the Respondent has defaulted in his payment obligations under the Stipulation and has requested additional time to pay the rent arrears;

WHEREAS, the Petitioner has agreed to extend the time and stay execution of the warrant under the following terms and conditions:

1.    The Respondent agrees that $243,181.51 is due and owing as rent and additional rent to Petitioner (breakdown: $182,891.91 due under the Stipulation; plus $26,500.00 per month as base rent for June 2015 and July, 2015 rent and the reduced sum of $23,000.00 for August and September, 2015; $1,060.00 per month in late charges for June and July, 2015; $42,169.60 in real estate taxes; $5,000.00 in legal fees; minus $88,000.00 in payments by Respondent since the Stipulation.

2.    The Petitioner agrees to stay enforcement of the judgment of possession and execution of the warrant for Respondent to pay said $243,181.51 as follows:

    i.    **$ 4,396.79** upon execution of this agreement;

    ii.   **$27,396.79** by September 15, 2015;

    iii.  **$43,967.90** in ten (10) **monthly installments** of **$4,396.79**, from October 1, **2015 through** July 31, 2016; payments to be received by Petitioner by the 15th day of each calendar month; and

    iv.   **$167,420.03**, representing the balance of rental arrears, to be paid in forty-eight (48) monthly installments of **$3,487.92**, from August 1, 2017 through July 31, 2021.

3.    Payments provided in paragraph 2 above shall be made in addition to the current base rent and additional rent that comes due under the Respondent's lease ("lease") for the subject premises to be paid as provided in the lease, unless otherwise stated herein.

4.    The Petitioner agrees to a defer payment of $5,090.00 per month of the current monthly base rent due under the lease for the period of August 1, 2015 through July 31, 2017, so base rent is temporarily reduced from $28,090.00 to $23,000.00 per

month.   The current base rent during this period shall be paid by the Respondent by the 15th day of each calendar month.

5.   The Respondent agrees to pay the deferred rent of $5,090.00 stated in paragraph 4 above, totaling **$122,160.00** (breakdown: $5,090.00 per month from August 1, 2015 through July 31, 2017), to the Petitioner in forty-eight (48) monthly installments of **$2,545.00** commencing on August 1, 2017 and continuing each month thereafter to July 31, 2021.   These payments shall be made in addition to the arrears due in para.2 above, the current base rent and additional rent as it comes due under the lease.

9.   All payments to be applied first to the current rent and accruing additional rent and then the rent arrears. Partial payments may be accepted by Petitioner.

6.   Upon Respondent's default of any of the aforementioned payments, the stay of eviction is immediately lifted and the warrant of eviction may be executed on service of the Marshal's notice of eviction, and all rental arrears and any accruing rent shall be due and owing.

7.   If the Respondent defaults, the Petitioner may also seek additional late charges and attorney's fees incurred in this proceeding and the enforcement of this agreement.

8. Upon default of any of the aforementioned payments, the stay of eviction is immediately lifted and the warrant of eviction may be executed on service of the Marshal's notice.

10. If the Respondent should timely make all of the payments provided in this agreement, including the current rent and additional rent as it comes due under the lease, and continues to remain current on its rental obligations thereafter, the Petitioner agrees to reduce the last month of base rent due under the lease by $20,140.00, so the base rent for that month alone will be $11,421.92.

11. Each of the Parties hereto acknowledges that, except as herein expressly set forth, no representation of any kind or character has been made by any such Party's officers, agents, representatives, or attorneys to induce any other Party to execute this Stipulation of Settlement.

12. This Stipulation of Settlement shall be binding upon and inure to the benefit of the Parties hereto and to their respective heirs, successors and assigns.

13. This Stipulation of Settlement constitutes the entire agreement between the Parties concerning the matters contemplated therein. This Stipulation of Settlement may not be modified or amended, nor any of its terms waived, except by a writing signed by all Parties hereto.

14. The language of all parts of this Stipulation of Settlement shall be in all cases construed as a whole, according to its fair meaning, and not construed for or against any of the Parties hereto, including the drafter of this Stipulation of Settlement.

15. This Stipulation of Settlement may be executed in counterparts by means of electronic transmittal or facsimile, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. Any party may submit this stipulation to the court ex parte to be "So Ordered".

DATED:    New York, New York
          September 1, 2015

9/8/15

_____
STEVEN T. GEE, P.C.
Attorney for Petitioner
121 Chrystie Street
New York, New York 10002
(212) 334-8838
By Steven T. Gee, Esq.

_____
LAW OFFICE OF STEPHEN S. DANETZ
Attorney for Respondent
118-21 Queens Boulevard
Forest Hills, NY, 11375
(718) 575-0045
By Stephen S. Danetz, Esq.

EXHIBIT "F"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------

In Re:                                              Chapter 11

**CREATIVE BGRS, INC. D/B/A BURGER KING**          Case No. 16-12787(MKV)

                    Debtor.
------------------------------------------------------------

### ORDER PURUSANT TO 11 U.S.C. §362
### GRANTING RELIEF FROM THE AUTOMATIC STAY

Upon the motion, dated October 14, 2016 (the "Motion") of Creditor Great Canal Realty Corp. (the "Great Canal") for an order modifying and lifting the automatic stay of section 362 of title 11, United States Code (the "Bankruptcy Code") to permit Great Canal to enforce the judgment of possession and execute the warrant of eviction (the "Warrant") issued in the non-payment proceeding between the Great Canal and the Debtor in the Civil Court of the City of New York, County of New York (the "State Court") and to take any further action which may be necessary to obtain possession of the ground level and basement commercial space in the building known as and located at 273 Canal Street, New York, New York 10013 (the "Premises"); and upon the affidavit of Dunnie Lai, officer of Great Canal filed in support of the Motion; and proper notice of the hearing (the "Hearing") on the Motion having been given to the Debtor, the Debtor's counsel, the creditors listed by the Debtor in its petition and any parties that filed a notice of appearance; and upon the record of the Hearing held before the Honorable Mary Kay Vyskocil on November 2, 2016, the transcript of which is incorporated by reference herein; and good cause appearing for the relief requested in the Motion; it is hereby

**ORDERED**, that the Motion is hereby granted to the extent set forth herein; and it is further

**ORDERED**, that the automatic stay of Bankruptcy Code §362 is modified and lifted to permit Great Canal to enforce the Judgment of Possession and execute the Warrant issued in the State Court and to take any further action which may be necessary to obtain possession of the Premises; and it is further

**ORDERED**, that pursuant to Bankruptcy Rule 4001(a)(3), this Order shall be effective immediately.

Dated: New York, New York
      November___, 2016

                                        _____
                                        Honorable Mary Kay Vyskocil
                                        United States Bankruptcy Judge

Chapter 11
Case No. 16-12787(MKV)
-------------------------------------------------------------------------------

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------


In Re:


**CREATIVE BGRS, INC. D/B/A BURGER KING**

          Debtor.




-------------------------------------------------------------------------------


**NOTICE OF MOTION OF GREAT CANAL REALTY CORP. FOR ORDER MODIFYING
AND LIFTING THE AUTOMATIC STAY OF 11 U.S.C. § 362**

-------------------------------------------------------------------------------

STEVEN T. GEE, P.C.
Attorney for Creditor Great Canal Realty Corp.
121 Chrystie Street
New York, New York 10002
(212) 334-8838



-------------------------------------------------------------------------------